## WILSON v. KELLY.

1. This court cannot consider points not shown to have been made in the
   court below, or in the exceptions to the judgment appealed from.
2. That lands of a decedent may be sold under a judgment obtained against
   the administrator alone, is the settled law of this State, but the doctrine
   should not be extended further than the decided cases imperatively de-
   mand.

3. When a creditor, who has obtained judgment against the administrator alone, on a debt due by the intestate, presents his claim in that form, under a call for creditors in a proceeding in the nature of a creditor's bill, he cannot object to an examination, by the heirs or other creditors, into the validity and amount of such claim. His judgment may be *prima facie* evidence of the validity of the claim, but is not conclusive.

4. A bond dated January 24th, 1861, "payable in three years in equal annual installments, with lawful interest thereon from January 21st, 1861, payable annually, and the first installment, with interest on the whole principal sum due, payable on January 21st, 1862," draws annual interest until its maturity, but simple interest afterwards.

---

Before WITHERSPOON, J., Kershaw, June, 1882.

The opinion states the case.

*Mr. Ernest Moore*, for appellant.

*Mr. J. T. Hay*, contra.

April 3d, 1883. The opinion of the court was delivered by MR. JUSTICE MCIVER. This was an action commenced in the Court of Common Pleas for Kershaw county, "for the settlement, partition and distribution of the estate of Wiley Kelly, deceased." The administrator and heirs-at-law are parties, and the creditors were called in to establish their demands before the master. The appellant, D. A. Williams, as administrator *de bonis non cum testamento annexo* of William McKenna, deceased, came in under this order and presented a claim, and this gave rise to the questions presented by this appeal.

The claim was in the form of a judgment recovered by the predecessor in office of the said D. A. Williams, in Lancaster county, a transcript of which was lodged in the office of the clerk of the Court of Common Pleas for Kershaw county, before the present action was commenced. The judgment was based upon a bond of Wiley Kelly, bearing date January 24th, 1861, conditioned for the payment of $1,282.25, "payable in three years, in equal annual installments, with lawful interest thereon from January 21st, 1861, payable annually, and the first installment, with interest on the whole principal sum due, payable on Janu-

ary 21st, 1862," which bond was secured by a mortgage of real estate situate in Lancaster county.

To the action on this bond, brought for a foreclosure of the mortgage, the administrator of Wiley Kelly, as well as the administrator and heirs-at-law of J. A. Cunningham, to whom the said Wiley Kelly had conveyed the mortgaged premises, were made parties, but the heirs-at-law of Wiley Kelly were not parties. The prayer was not only for judgment of foreclosure, but also that execution be awarded against the administrator of Wiley Kelly for any balance that might remain unpaid by the proceeds of the sale of the mortgaged premises. To that action the administrator of Wiley Kelly appeared, by attorney, but made no answer, and, judgment having been recovered, the mortgaged premises were sold, and, upon a report to the court of the balance remaining unpaid, after applying the proceeds of the sale, judgment was entered for such balance against the administrator of Kelly.

Upon an accounting had in this case the administrator of Kelly has been found indebted to the estate of his intestate in amount more than sufficient to pay the claim presented by D. A. Williams, as administrator as aforesaid, and the lands of the intestate, Wiley Kelly, have been sold under an order in this cause, and the proceeds are now in the hands of the court.

The master, to whom it was referred to take proof of the claims presented, after setting forth the origin and nature of this claim, stated that the respondents alleged that the judgment was taken for a larger amount than was really due, by reason of two errors in the calculation: First, in computing annual interest on the bond after its maturity; and second, in omitting to credit the net proceeds of the sale of the mortgaged premises; and claimed to have the amount of the claim reduced to what it would be after correcting these alleged errors. The master, while finding that these errors had been committed, reported that he did not think that he had any authority to open the judgment and correct the errors, and he therefore declined to do so; but, at the request of counsel, he appended to his report a statement of what he regarded as a correct calculation of the amount due on the bond, in which he stopped the computation of the annual interest at the maturity

of the bond, only allowing simple interest after that date, and also gave credit for the amount of the net proceeds of the sale of the mortgaged premises.

To this report both parties excepted—the respondents substantially upon the ground that the master erred in declining to correct the errors above mentioned; and the appellant upon the grounds, substantially, that the judgment was conclusive, and that the master should have reported the claim, as established, for the full amount; that, even if the judgment should be opened, there was no error in the mode of computing the interest, inasmuch as, by a proper construction of the terms of the bond, it bore interest, payable annually after as well as before maturity; and, lastly, because the master erred in finding that the net proceeds of the sale of the mortgaged premises had not been credited.

The Circuit judge, agreeing with the master that the errors pointed out did exist, held that the heirs of Wiley. Kelly, not having been parties to the action in which the judgment was recovered, " are not estopped or precluded thereby from showing any error therein," and that, under a proper construction of the terms of the bond, it ceased to bear interest payable annually after its maturity. He therefore allowed the claim only for the amount as ascertained by the statement appended to the master's report, in which the alleged errors had been corrected, and ordered it paid out of any money in the hands of the court.

From this judgment D. A. Williams, as administrator as aforesaid, appeals upon two grounds, substantially: First. Because the Circuit judge erred in holding that the heirs-at-law of Wiley Kelly were not precluded from showing error in the amount of the judgment recovered against the administrator of Wiley Kelly, insisting that he should, on the contrary, have held that the judgment was conclusive. Second. That there was error in holding that the interest on the bond did not continue to be payable annually after its maturity.

It is true that, in the appellant's exceptions to the report of the master, which he adopts in his grounds of appeal, it is alleged that there was error in finding that the net proceeds of the sale of the mortgaged premises were not credited, but as nothing was

said about this matter in the argument, we presume it was abandoned. At all events, whether abandoned or not, all that we know about it is what is said in the master's report, and he found, as matter of fact, that this credit had been omitted, which finding is concurred in by the Circuit judge. Therefore, even if such an exception had been urged, it could not be sustained.

The appellant also, in his argument, makes the point that, inasmuch as it appears from an accounting in this case that the administrator of Kelly is indebted to the estate of his intestate in an amount more than sufficient to pay the full amount of the judgment, he, at least, should be entitled to an order for the payment of the full amount of the judgment out of such balance, the administrator having been a party to the action in which such judgment was recovered, and, therefore, bound thereby. We are unable to find where any such point was made in the court below, or in the exceptions to the judgment appealed from, and, therefore, we are not at liberty to consider any such point.

There are then but two questions presented for our consideration: First. As to the effect of the judgment presented by the appellant. Second. If we shall conclude that the judgment presents no bar to such an inquiry, as to the proper mode of calculating the interest on the bond.

In considering the first question, it would be interesting, though we do not regard it as either necessary or important, to go into an examination of the various cases in this State, in which questions relating to the effect of a judgment obtained against the administrator in a proceeding to which the heirs were not parties, upon the rights of the heirs in the lands of the ancestor, have been considered; but in the pressure of business now before this court, we are admonished that our duty will best be preformed by confining our attention strictly to the real points necessary to be determined in the cases presented for our consideration. It is sufficient to say, that from the time of the case of *D'Urphey* v. *Nelson*, 1 *Brev.* 289, decided in 1803, down to the case of *Rogers* v. *Huggins*, 6 *S. C.* 356, decided in 1874, it has been uniformly held that the lands of a decedent may be sold under a judgment obtained against the administrator, even

though the heirs were not parties to the proceeding in which the judgment was recovered.

It is true that, upon more than one occasion, regrets have been expressed by some of our most eminent judges that such a doctrine should ever have become a rule of law, and although we may be fully convinced that it would be extremely difficult, if not impossible, to vindicate such a doctrine if it were now an open question, yet a due regard to the rule of *stare decisis* forbids any interference with it at this late day. But believing, as we do, that it is difficult to reconcile this well-settled doctrine with certain other equally well-established fundamental principles, we are not disposed to extend the doctrine beyond what the decided cases imperatively demand. Those cases do not, in our judgment, determine the question now presented for our consideration, and, therefore, without in any way intending to impair the authority of *D'Urphey* v. *Nelson*, and other cases which have followed it—but, on the contrary, fully recognizing their binding force—we shall enter upon the discussion of the question presented by this appeal.

If the appellant had undertaken to levy and sell the lands of the intestate under his judgment recovered against the administrator, and the heirs had instituted a proceeding to enjoin the sale, upon the allegation that the judgment had been recovered for an amount larger than what was justly and lawfully due, a very different question would have been presented. But that is not the case we are called upon to consider. The precise question now before the court is, whether, when a creditor, who has obtained judgment against an administrator for a debt due by his intestate, presents his claim, in that form, in a proceeding in the nature of a creditor's bill, under an order calling in creditors, he can object to an examination into the amount or validity of such claims by the heirs or by other creditors who were not parties to the proceeding in which his judgment was obtained, upon the ground that such judgment is conclusive.

There is no doubt that the heirs are necessary parties to a creditor's bill, and this is because they hold the legal title to the lands sought to be sold under such bill; and, therefore, in order

that their title, which is held subject to the claims of the creditors of the ancestor, may be divested by the sale which the court is asked to order for the purpose of paying the debts of the ancestor, it is necessary that they should be made parties upon the well-settled fundamental principle that a man is not to be deprived of his property, even at the instance of one who may have some just and legal claim upon it, until he has had an opportunity of being heard. Being parties, it would seem to follow, necessarily, that they would have the right to be heard upon every issue arising in the case upon which they have not already been heard, either in person or by some one authorized to represent their interests, otherwise it would be altogether nugatory to bring them before the court.

Now, while it may be true, so far as the personal estate is concerned, that the administrator does represent the distributees, who, under our statute, are the same persons as the heirs, inasmuch as the legal title to that kind of property vests in the administrator upon the death of the intestate, the same cannot be said as to the real estate, for with that the administrator has nothing to do. *Mauldin* v. *Gossett*, 15 *S. C.* 578. The heirs, not having been represented by the administrator in the action in which the judgment in question was obtained, have never been heard, or had an opportunuity of being heard, upon the issues in that action; and, therefore, it would seem to follow that they ought now to be allowed the opportunity of being heard upon such issues, one of which is as to the amount legally due upon the bond, and that they will not be estopped by a judgment obtained in an action to which they were not parties or privies.

Upon the same principle it is well settled that, in a proceeding to subject descended real estate in the hands of the heirs to the payment of the debts of the ancestor, a judgment obtained against the administrator does not preclude the heirs from making any defense to which the claim upon which such judgment has been obtained, may be subject. *Gilliland* v. *Caldwell*, 1 *S. C.* 198, and the cases therein cited. As is said in that case, "The statute of George II. does make descended lands in the

possession of the heirs liable for the payment of the debts of the ancestor; but the cause of action must be established against them in a suit to which they are parties, and they are not bound by a judgment against the administrator to which they are neither parties nor privies."

Again, it is well settled that the assets of a deceased debtor are distributable among his creditors, according to the rank and condition of their demands at the time of the death of such debtor. *Morton & Courteny* v. *Caldwell*, 3 *Strobh. Eq.* 161; *Tucker* v. *Condy*, 7 *Rich. Eq.* 281; *Wilson* v. *McConnell*, 9 *Rich. Eq.* 500; *Edwards* v. *Sanders*, 6 *S. C.* 316; and the only exception to this rule, so far as we are informed, if it can in fact be called an exception, is that established by the act of 1878 (16 *Stat.* 686), which declares that, after the property of an intestate covered by a mortgage is exhausted, the grade of the demand shall be determined by the nature of the instrument which the mortgage was given to secure.

As is said by Chancellor Johnston, in *Wilson* v. *McConnell, supra,* in stating the principle established by the case of *Morton & Courteny* v. *Caldwell,* in which the same chancellor had delivered an elaborate and able opinion, "demands are presentable against the estate of an intestate in the precise condition in which they existed at his death." Hence, when creditors are called in under a proceeding in the Court of Equity to present their demands against the estate of an intestate, one who has reduced his claim to judgment against the administrator stands in no higher or better position by reason of that fact, but his claim must be examined as it stood at the time of the death of the intestate, and its rank must be assigned and its amount determined by such examination. The judgment is at most only *prima facie* evidence of the validity of the claim, which is liable to be overcome by other evidence.

Thus, if a creditor by a joint and several bond should, after the death of the intestate, receive payments from the surety, thereby reducing the amount really due on the bond, he would still be entitled to have his debt estimated at its full amount, as it stood at the death of the intestate, in determining the *pro*

*rata* of the assets of the estate to which he would be entitled, without any deduction of the payments made by the surety. Upon the same principle, if after such payments were made by the surety he should obtain judgment against the administrator for the balance then due, he would, when called in to establish his demand against the estate, be entitled to present it in the condition in which it was before such payments were made and before such judgment was recovered, and his *pro rata* share of the assets of the intestate's estate would be estimated upon the amount of the debt as it stood at the time of the death of the intestate, without deducting the payments subsequently made by the surety. In other words, his claim should be presented as a bond debt, and not as a judgment. This being so, it would follow, necessarily, that the claim thus presented would be open to any assault that might be made upon it, either by the heirs or by the other creditors. The issues presented would be whether the intestate was indebted, at the time of his death, upon the claim, and, if so, what was then the true amount of such indebtedness.

We think, therefore, that there was no error on the part of the Circuit judge in holding that the judgment against the administrator of Kelly, set up by the appellant, presented no obstacle to the investigation of the amount really due on the claim.

The only remaining inquiry is as to the proper mode of computing the interest, and upon this point also we agree with the Circuit judge. This question has been so recently before this Court upon several occasions, and the principles upon which it is to be determined are so well established, that we do not deem it necessary to go into any extended discussion of the subject. See *Sharpe* v. *Lee*, 14 *S. C.* 341; *Mobley* v. *Davega*, 16 *S. C.* 73; *Watkins* v. *Lang*, 17 *S. C.* 13. These cases determine that the question is one of intention to be deduced from the terms of the instrument upon which the question arises. If the promise is to pay a given amount at or within twelve months from date, with interest *payable annually*, then, in order to give the words italicized any force or effect at all, it is necessary to conclude that the intention was that the interest shall continue to be payable

annually after as well as before maturity; but if the promise is to pay in installments extending over a period of two or more years, or to pay the whole sum two or more years after date, with interest from date, *payable annually,* then those words may be given full force and effect. without extending that mode of calculating the interest beyond the maturity of the bond, and hence the computation of interest with annual rests will then cease, and from that time only simple interest on the amount then due is chargeable, unless there are other words in the instrument—for example, "until the whole be paid," or other equivalent words—indicating an intention that interest should continue to be payable annually as long as the debt or any part thereof remained unpaid.

The practical question, therefore, in this case is whether there are any words in the bond indicating an intention that the interest should continue to be payable annually after as well as before maturity. The words of the bond are "payable in three years, in equal annual installments, with lawful interest thereon from January 21st, 1861, payable annually, *and the first installment, with interest on the whole principal sum due, payable on January 21st, 1862,*" and the words relied upon by the appellant are those which we have italicized. These words are certainly not the equivalent of the words " until the whole be paid," found in *Watkins* v. *Lang;* nor are they of the same purport as the words found in *Wright* v. *Eaves,* 10 *Rich. Eq.* 582, where the language was to "pay interest on said sum of $2,300 from this date, and pay said interest annually as it becomes due."

In fact we see no reason why the words relied upon in this case should be regarded as indicating an intention that the interest should continue to be payable annually after the maturity of the bond, or as indicating that the parties contemplated an indefinite extension of credit beyond the period fixed for the payment of the last installment. On the contrary, it seems to us that the sole purpose in inserting the words relied upon was to state expressly what, without some such words, would have been left to inference, viz.: the exact date at which the first installment should become payable; for it will be observed that the bond bore date January 24th, 1861, while the interest was to

run from January 21st, 1861, and hence it might have been a matter of doubt at what precise date the first installment would become payable, without the addition of some such words as those in question.

The judgment of this court is that the judgment of the Circuit Court be affirmed.