GREGORY v. RHODEN.

1. Under a proceeding in the Court of Probate by a creditor, who was also administrator, to sell land in aid of assets, that court has jurisdiction to determine in the first instance the validity of an alleged deed under which one of the defendants claimed to hold title from the intestate.

2. An intestate gave his sealed note to his son in April, 1866, and in July, 1866, conveyed his lands to his wife at his death, which took place in the following November. The widow held possession of these lands as her own until her death in 1879. Afterwards this son administered on his father's estate, and in 1883 filed a petition in the Court of Probate to sell these lands in aid of assets. *Held*, that he had been guilty of *laches*, and could not invoke the aid of equity.

3. This case distinguished from *Suber* v. *Chandler*, 18 *S. C.*, 528.

Before KERSHAW, J., Aiken, July, 1884.

The opinion states the case. The Circuit decree was as follows:

The defendants insist that this obligation was conditioned on the performance by the plaintiff of the considerations expressed

therein, and that performance has not been proved. In the year 1865 intestate made a will leaving all his property to the plaintiff, or, at least, the land now in question, assigning as a reason that plaintiff was the only one of his children who resided with and rendered him service, and that he desired to compensate him in that way. In March, 1866, the will was destroyed, and plaintiff thereupon told the laborers whom he had employed to work on the farm that year that they must look out for themselves, as he also had to do. Afterwards, when the obligation here set up had been executed, plaintiff continued to serve his father as he had done before. From this, it appears to me that plaintiff, before the destruction of the will, was performing these services gratuitously, but in expectation of being compensated eventually by the provisions of the will; that after the will was destroyed, he declined to continue his services, and only resumed them when other provision for his compensation had been made by this writing. This accounts well for the making of the contract, and also furnished a good reason for considering the services of plaintiff to his father after that time as having been rendered in performance of his duty thereunder. I consider the evidence sufficient to establish plaintiff's claim, even if we consider it as conditioned on performance on the part of plaintiff.

If I were left in doubt as to the sufficiency of the evidence on this point, it would be a proper case in which to frame an issue for the decision of a jury, as was directed by the court on the appeal in *Shaw* v. *Cunningham* (9 *S. C.*, 271), as suggested by counsel for defendants, but I cannot say that I entertain any doubt on the subject. This is just one of those cases in which juries are apt to be governed by some supposed principles of natural justice or equality rather than by the rules of law, and such a reference ought not to be made unless clearly required for the solution of a question of fact which the court is led to hesitate about by the evidence.

I now pass to the consideration of the points made by the plaintiff's appeal. The case of *Faust* v. *Bailey* (5 *Rich.*, 107), taken in connection with section 60 of the Code of Procedure, seems to me conclusive on this point. The judge of probate ought to have considered the question of title raised, and his fail-

ure to do so was error.   According, however, to the view I have
taken of the legal aspects of the case, it will not be necessary to
remand the matter for a further hearing in the court below.  The
results will depend on questions of law rather than of fact.

The deed upon which the defence rests was made by a husband
to his wife before the common law relations of married women
had been changed in this State.   As the law then stood, if the
grant was intended to operate *in presenti*, it was void, because a
husband could not make such a grant to his wife after coverture,
unless in pursuance of articles entered into before marriage and
in consideration of marriage.   On the other hand, if it was tes-
tamentary in its character, it was ineffectual, because it was not
executed with the formalities required in the case of a will.
Moreover, being a voluntary deed, it would have been void as to
existing creditors under the statute of 13th *Eliz.* and the deci-
sions thereon; if properly assailed by the creditors, it could not
prevail against them.   *Twyne's Case,* 3 *Co.,* 80; 1 *Sm. Lead.
Cas.,* 1.

Nevertheless such grants are supported in equity, under cer-
tain circumstances, when they would be void at law.   Says Mr.
Story: "A grant of a reasonable provision to a wife would be
enforced in equity though void at law; but if a husband, by
deed, grant all his estate or property to his wife, the deed would
be held inoperative in equity as it would be at law."   *Story Eq.
Jur.,* § 1373.   See also *Beard* v. *Beard,* 3 *Atk.,* 72; *Davidson*
v. *Graves, Riley Ch.,* 232.   It is intimated in *Price* v. *Price*
(12 *Eng. L. & E.,* 144) that even a grant of the husband's whole
estate to his wife would have been supported if there had been
proof that the grantor, who was illiterate, knew what he was
about.

There may be a gift made by a husband to his wife which,
though bad at law, would be supported in equity; but, as was
stated in *McLean* v. *Longlands* (5 *Ves.,* 78), nothing less will
do than a clear, irrevocable gift, either to some person as a trustee
(for the wife) or some clear and distinct act of the husband by
which he divested himself of the property and engaged to hold
the same as a trustee for the separate use of his wife.   Lord
Hardwicke, in the case of *Lucas* v. *Lucas* (1 *Atk.,* 271), which

has been referred to, distinctly says that in this court gifts between husband and wife have often been supported, though the law does not allow them to pass the property. Though the property does not pass at law, yet, in equity, a husband, being the owner at law, may become a trustee for his wife; and if by clear and irrevocable acts he has made himself such trustee, the gift to his wife will be conclusive. *Mews* v. *Mews*, 21 *Eng. L. & E.*, 558.

Here the intention is plain to give to the wife, by an irrevocable instrument, an estate to vest in possession at his death. Such an estate cannot be supported without a trustee, but equity will not suffer a trust to fail for the want of a trustee. In the present case, the husband would be considered a trustee for his wife. *Cloud* v. *Calhoun*, 10 *Rich. Eq.*, 362; *Ellis* v. *Woods*, 9 *Rich. Eq.*, 24.

This deed might, therefore, be sustained on these principles, so far as regards the common law disabilities of husband and wife to contract with each other. But it is liable to another objection, in that it is a marriage settlement, requiring to be recorded as such, and void as to creditors for the want of such recording. *Banks* v. *Brown*, 2 *Hill Ch.*, 558. Yet it was good between the parties and would remain so until set aside or superseded by some action on the part of the creditors. As said by Chancellor Harper, in *Fripp* v. *Talbird* (1 *Hill Ch.*, 142), "creditors may treat it as void—they are not compelled to avoid it, but may seize the property as if there was no deed; but until they do seize the property, the deed remains perfectly good." He was speaking of a post-nuptial settlement not recorded, and of judgment creditors.

The deed here being good between the parties, the property passed to Mrs. Gregory, at the death of her husband, subject to be divested by proper proceedings on the part of creditors taken in due time. Has this plaintiff proceeded in due time? Having notice of the deed, he ought to have proceeded within four years thereafter. *Lott* v. *DeGraffenreid*, 10 *Rich. Eq.*, 346. In fact, no proceedings were had until the commencement of this action in 1883, a period of nearly seventeen years after the plaintiff had notice of the deed. During all these years there

has been possession under the deed, and plaintiff has stood by in silent acquiescence. True, there was no administrator of the estate of Richard Gregory until recently, but that need not have prevented a proceeding in equity against Margaret Gregory in her life-time, or against her heirs after her death, to subject the land in question to the plaintiff's claim. *Vernon & Co.* v. *Valk*, 2 *Hill Ch.*, 257. I am of the opinion that, after so long a delay, plaintiff ought not now to have the aid of the court in enforcing his demand. Upon the ground of *laches*, as applied in the courts of equity, the complaint must be dismissed. 2 *Story Eq.*, § 1520, *et seq.*, and notes; *Mobley* v. *Cureton*, 2 *S. C.*, 149. In that case the doctrine was applied when the statute of limitations was held not to be a bar.

I am the less reluctant to dismiss the action on account of the nature of the plaintiff's claim. He will suffer no great loss, for the services rendered to his father, under the contract, could have been of little value, inasmuch as the father died within a very few months after they commenced. Perhaps it was this view of the matter which induced the plaintiff to delay action for so many years.

It is ordered and adjudged, that the complaint be dismissed, and that the plaintiff do pay the costs of this action. Let the judgment be certified to the Probate Court.

*Messrs. Henderson Bros.*, for appellant.

*Mr. G. W. Croft*, contra.

January 5, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On April 2, 1866, Richard Gregory, sr., as alleged, executed and delivered to his son, Richard Gregory, jr., the following note or obligation, viz. : "One day after date I promise to pay Richard Gregory, jr., or bearer, the sum of two thousand dollars, to support me my life-time, including to let him use my farm and implements my life-time, and it is to come out of my land and other property that I hold at this time. Witness my hand and seal this 2 April, 1866.

"RICHARD GREGORY, SR., [L. S.]"

On July 7, 1866, the said Richard Gregory, sr., executed and delivered to his wife, Margaret, a paper which, in consideration of love and affection, and of five dollars acknowledged to have been paid, purported to convey to her, the said Margaret, all his personal property and five hundred acres of land described, "to have and to hold the said plantation and all the personal property that I may be possessed of at my decease, unto the said Margaret Gregory, her executors, administrators, and assigns forever," &c. This paper contained a warranty, was delivered, probated, and recorded, but had but two witnesses.

In November, 1866, the said Richard Gregory, sr., died intestate, and his widow, Margaret, continued to live on the land included in the paper delivered to her as aforesaid, until she also died intestate on December 19, 1879. On the estate of Richard Gregory, sr., no administration was granted until after the death of the widow, Margaret, when, on February 12, 1880, letters were granted to Jonathan Gregory, but he died before administering the estate, and letters *de bonis non* were granted to Richard Gregory, jr., who, as creditor and administrator, on March 8, 1883, instituted these proceedings in the Probate Court in the nature of a bill to marshal assets; but there being no personal estate, it was manifestly for the purpose of setting aside the deed to Margaret, and making the land covered by it still the property of his father, Richard Gregory, sr., and as such liable for his debt. The other heirs of Richard Gregory, sr., and of his widow, Margaret, were made parties, and they denied that the plaintiff was a creditor of his father, Richard; but if so, that the said Richard did not die seized and possessed of the lands, which he had previously given to his widow, Margaret, and that they, the said lands, belong not to the heirs of Richard, the father, but to those of Margaret, the mother. And further, they insisted that the judge of probate had not jurisdiction to decide that point, as it involved a question of title to land.

The creditors of Richard Gregory, sr., were called in, and the probate judge, after taking much testimony, held that two debts of the intestate were established, viz., that of the plaintiff for $2,000, and interest, upon the obligation before referred to, and one of J. G. Steadman, on a balance of two notes, one for $221.77,

and the other for $341.95; but he held that the Probate Court
had not jurisdiction to determine the title to the land. Both par-
ties appealed to the Court of Common Pleas—the plaintiff on the
question of jurisdiction, and the defendants on the ground that
the plaintiff's claim was not established as a debt by the evidence.
Judge Kershaw concurred with the probate judge, that the plain-
tiff's claim was established as a debt of the intestate, but he held
further that the probate judge ought to have considered the ques-
tion of title raised, and his failure to do so was error. But taking
the view that there was involved a question of law, which should
finally dispose of the litigation, he thought it unnecessary to
remand the case for a further hearing in the court below, but
decided it on the ground that, after so long a delay, the plaintiff
ought not now to have the aid of the court in enforcing his de-
mand, and that upon the ground of *laches*, as applied in the courts
of equity, the complaint should be dismissed. The plaintiff ap-
peals to this court upon several grounds, which will be considered
in their order.

The first exception is, "That his honor erred in not holding
that the paper from Richard Gregory, sr., to Margaret Gregory,
bearing date July 7, 1866, was testamentary in its character, and
hence void, as against the claims of the plaintiff and other credi-
tors, because it had but two witnesses," &c. It does not appear
that this point was made in the Probate Court, or in the grounds
of appeal from that court. But it may possibly be considered as
embraced in the question of jurisdiction, because the title to land
was involved. Considering it as involved in that objection and
before the court, we concur with the Circuit Judge that the Pro-
bate Court should have decided the question. It may be con-
ceded that, if the proceeding had been instituted simply for the
purpose of setting aside the deed, in order to make the lands in
the possession of the heir or donee liable for a debt of the ances-
tor, it would have been purely equitable in character and not
within the constitutional jurisdiction of the Probate Court.

But the proceeding is in form, at least, for the purpose of mar-
shalling the assets of the estate of Richard Gregory, sr., under
section 40 of the Code, which gives to the Probate Court juris-
diction for that purpose. "And whenever it shall appear to the

satisfaction of any judge of probate that the personal estate of any person deceased is insufficient for the payment of his debts, and all persons interested in such estate, being first summoned before him, and showing no cause to the contrary, such probate judge shall have power to order the sale of the real estate of such person deceased, or of so much thereof as may be necessary for the payment of the debts of such deceased person, upon such terms," &c. It seems to us that in such cases this provision necessarily gives the right to determine, at least in the first instance, what is "the real estate of such person deceased," subject, of course, to the right of appeal to the Court of Common Pleas, where a trial by jury may, if desired, be demanded. Any other construction would tend to make the whole jurisdiction nugatory. Besides, while it may be that title to land was involved in the decision of the question, it is clear that it was one of law as to the proper construction of the paper in contention, viz., whether it was valid or void, or merely voidable as against prior creditors of the donor. See *Faust* v. *Bailey* (5 *Rich.*, 107), where it was held that in an application for partition the old Court of Ordinary had jurisdiction to decide in the first instance upon a question of title, subject, of course, to appeal.

The second exception is, "That his honor erred in holding 'that the plaintiff's complaint should be dismissed upon the ground of *laches* on the part of the plaintiff in prosecuting his claim,' in that it is submitted that the plaintiff was guilty of *no laches*, for the testimony shows that he acted within the statutory period, and within the time required by good faith and conscience," &c. In respect to a question of *laches*, we do not understand that a proceeding to make land liable for the obligation of a deceased debtor, is identical with an action on the obligation itself against the personal representative of the deceased debtor. In the latter case there is privity of contract, and the action must be at law, while in the former there is no privity, and the proceeding is in equity. Where a legacy has been delivered to a legatee, and he has had separate and exclusive enjoyment thereof for more than four years, the Court of Equity will not allow it to be recovered back for the purpose of paying a debt of the deceased, although the debt is in the form of a bond, and not subject to the statute of limitations.

7

*Brewster & Dickson* v. *Gillison*, 10 *Rich. Eq.*, 435. Even where the land sought to be charged has descended to the heirs, upon whom the law imposes certain liabilities to the creditors of the ancestor, it has been held that it cannot be sold under a judgment against the administrator, if it has passed into the actual and exclusive possession of the heirs before the judgment was recovered. In such case the land can only be reached by the usual proceeding to subject real estate in the hands of the heir to the payment of the debts of the ancestor, in which proceeding the heir must, of course, be a party, with the opportunity to defend himself. *Huggins* v. *Oliver*, 21 *S. C.*, 159, and the authorities cited.

This being the principle as to lands devolving upon the heirs, it would seem to apply with increased force to one who is in exclusive possession of land claiming as donee of the deceased debtor, and, therefore, this proceeding must be regarded as having a double aspect, first, to marshal the assets of Richard Gregory, sr., and then, as incidental thereto, to set aside his deed to the widow, Margaret. In this view, the case is not analogous to that of *Suber* v. *Chandler*, 18 *S. C.*, 528, cited by the appellant. The proceeding in that case was simply to remove an obstacle in the way of enforcing a judgment, and was substantially *inter vivos*. It is true that the defendant in execution was dead at the time the bill was filed, but he was living at the time the debt was sued and until a short time before judgment was recovered; while the proceeding in this case was primarily to marshal assets, and only for that reason was maintainable in the Probate Court. To enable him to institute such a proceeding, it was not necessary that the creditor should have a judgment at all. He might file a creditor's bill upon a simple note of the deceased. The appellant had the same right to institute this proceeding at the death of his intestate, Richard Gregory, sr., that he has now. If his right of action could not accrue until he had judgment and a return of *nulla bona*, it has not yet accrued, for there was no such proof in the case. If administration was indispensably necessary, he might have taken out letters at any time after the death of the intestate, as he has lately done. Without stopping to consider the peculiar character of the deed to Margaret, or whether the Circuit Judge was right in holding that it was good between the parties until

set aside by proper proceedings, it is certain that the widow, holding under that deed, had exclusive and adverse possession for more than ten years, and with full knowledge of the plaintiff.

The Judge held as matter of fact, "That no proceedings were had until the commencement of this action in 1883, a period of nearly seventeen years after the plaintiff had notice of the deed. During all these years there has been possession under the deed, and the plaintiff stood by in silent acquiescence. True, there was no administrator of the estate of Richard Gregory until recently, but that need not have prevented a proceeding in equity against Margaret Gregory in her life-time or against her heirs after her death, to subject the land in question to the plaintiff's claim. *Vernon & Co.* v. *Valk*, 2 *Hill Ch.*, 257." As a rule, ten years adverse possession of land gives title as against all who are capable of suing and do not. If such possession is held under a defective deed, it cures the defect and gives good title; *Lyles* v. *Kirkpatrick* (9 *S. C.*, 265), in which the court say: "In itself, the deed is deficient in point of proof for want of two subscribing witnesses; but inasmuch as a possession of upwards of ten years had been held under it of an adverse character, without the assertion of title in opposition to it, the validity of the deed cannot be disputed at this time."

It is true this proceeding to make the land liable is equitable in its character, to which the statute of limitations, as such, has no proper application. But if the creditor has been guilty of *laches* in asserting his equity, the court may refuse him its aid, and bar the equitable remedy at a period short of that, which would raise a presumption of payment. *Lott* v. *DeGraffenried*, 10 *Rich. Eq.*, 346; *Mobley* v. *Cureton*, 2 *S. C.*, 148; *Blackwell* v. *Ryan*, 21 *S. C.*, 112; *Smith* v. *Smith*, *McM. Eq.*, 134. In this last case Chancellor Dunkin said: "In regard to equitable titles, courts of equity are to be considered as affected only by analogy to the statute of limitations. If a party be guilty of such *laches* in prosecuting his equitable title as would bar him if his title was solely at law, he shall be barred in equity."

The third exception charges that there was another debt proved, against which no objection was made, and therefore, in any view, the land should be sold for the payment of that debt. It is true

that the probate judge held as proved a debt of the intestate to one A. G. Steadman, but the Circuit Judge made no separate reference to it in his decree. Upon looking to the proof, it seems to have been the balance of a debt older than that to the plaintiff, and we assume that the judge considered his ruling as applying alike to both.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.