### BROCK v́. KIRKPATRICK.

1. EXCEPTION by appellant to an order transferring case to Calendar 1 for trial of legal issues is speculative after trial and verdict in favor of appellant and appeal therefrom.

2. DEMURRER.—Refusal to sustain demurrer after it has been sustained by preceding Judge on facts stated, reserving further consideration when sufficient facts were stated, there having been no amendment to answer, is not error.

3. JUDGMENT—PROBATE COURT—LANDS DEVISED—EXECUTOR.—A judgment obtained in Court of Common Pleas against executor on note of testatrix, and acknowledged by him in accounting in probate court on application for final discharge, allowed by probate court as a claim against the estate, enrolled as a judgment in probate court, transcribed to Court of Common Pleas and execution issued thereon by probate court, is binding on the creditor and the estate, and is *prima facie* evidence of indebtedness by testator in suit by creditor against devisees to subject lands in their possession to payment of the debt without production of the note on which it is based.

4. LACHES.—Testator died in 1888; executor converted personal property into money within the year; action commenced on note of testator in Court of Common Pleas in 1890, and judgment obtained by default in 1891; execution issued and levied on lands in possession of devisees, but no sale made; in 1890 proceeding to construe will, for accounting by executor and adjudication of claims, commenced in probate court, and final judgment in 1892; in 1893, execution issued on the judgment enrolled by probate court from judgment in Court of Common Pleas and levied on same lands; action to injoin this sale commenced in 1893, injunction made perpetual in 1898, without prejudice, to bring action to subject lands devised to payment of testator's debt; this action commenced in 1899—*held, no laches.*

5. REHEARING *refused.*

Before J. E. McDONALD, special Judge, Abbeville, February, 1904. Reversed.

Action by L. A. and T. H. Brock, partners, against Hannah Kirkpatrick and Annie Taylor. From Circuit decree, plaintiffs appeal.

*Mr. Wm. N. Graydon,* for appellants, cites: *Have plaintiffs been guilty of laches:* 60 S. C., 352; 69 S. C., 231; 26

S. C., 186; 28 S. C., 101; 25 S. C., 204; 43 S. C., 436. *Not necessary for plaintiffs to introduce the note: Brown* v. *McMellin,* 2 Hill's Ch.; 61 S. C., 426; 71 S. C., 67; 1 McC., 495; 1 Green. Ev., secs. 527, 536, 538, 539; 21 S. C., 147; 1 Brev., 289; 25 S. C., 214. *Judgment of probate court is valid:* 54 S. C., 74; 65 S. C., 307; 56 S. C., 392. *Error to order case tried by jury:* 66 S. C., 455. *Defendant's claim of homestead should have been stricken out of answer:* 56 S. C., 173.

*Messrs. M. P. DeBruhl* and *Frank B. Gary,* contra, cite: *Did probate court have jurisdiction to render the judgment here:* Code of Proc., 64, 40, 41; 65 S. C., 308. *Original debt must be established against these defendants:* 1 S. C., 198; 19 S. C., 166; 60 S. C., 346; 38 Am. R., 15; 5 Ency., 1 ed., 274, 275, 233; 19 S. C., 166; 21 S. C., 153. *Plaintiffs are guilty of laches:* 62 S. C.; 89; 18 Ency., 2 ed., 119, 113; Rice Eq., 240.

The opinion in this case was filed on October 10, 1905, but remittitur held up on petition for rehearing until

October 30, 1905.    The opinion of the Court was delivered by

MR. R. W. SHAND, *acting Associate Justice in place of* MR. JUSTICE GARY, *disqualified.*    This is an action by L. A. & T. H. Brock, partners, against Hannah Kirkpatrick and Annie Taylor, devisees of Jane Taylor, deceased, to subject lands devised to them and in their possession to the payment of a debt due the plaintiffs by Jane Taylor at the time of her death.

Jane Taylor gave to plaintiffs on 27th April, 1888, her promissory note for $109.90, payable at one day, with annual interest at ten per cent.    The maker of this note died in December, 1888, leaving this note wholly unpaid.    Soon thereafter her will was duly proved, and Richard T. Kirkpatrick duly qualified as executor.    She left a personal estate

of about $1,200, and several tracts of land, all but two of which she had previously conveyed to her several children, these two defendants excepted, but these deeds seem not to have been delivered, and were recorded after her death. Of the two tracts not so intended to be conveyed, she directed one of 210 acres to be sold by her executor, and divided the other of 450 acres into two parcels, one of which containing 200 acres she devised to Hannah Kirkpatrick, and the other containing 250 acres to Annie Taylor. It is these two parcels that plaintiffs seek to subject to the payment of their claim against testator.

In 1889, the executor of Jane Taylor's will made sale of her personal effects, realizing therefrom $940.50, collected $211.75 on debts due testator, and purchased himself at public outcry the 210 acre tract for $300. Of the personalty sold for $940.50, the legatees purchased to the amount of $743.91, Hannah Kirkpatrick's purchases aggregating $166.97, and Annie Taylor's $83.29. These amounts were never paid by the devisees, but were charged against their interests. Soon after the purchase of the land by the executor, he resold it for $1,200, of which $800 was in notes secured by a mortgage of the premises. The executor subsequently, about 1890, sold these notes and mortgage to the plaintiffs, who paid him therefor, and thereafter recovered judgment of foreclosure on the mortgage. A statement made by the probate judge in 1895 indicates that the debts due by testator at the time of her death amounted to less than $925, and the subsequent expenses of administration, not including commissions, to $221.65. In this statement the executor was charged with $1,200 for the tract of land sold by him.

In August, 1890, Mary Hughes and others, legatees and devisees of Jane Taylor, commenced a proceeding in the court of probate against the executor and other beneficiaries under the will of testatrix, for the settlement of the estate. Creditors were not made parties. This case came to this Court at the April term of 1892. See 37 S. C., 161, 15 S.

E., 912. On December 3, 1890, the plaintiffs brought their action against R. T. Kirkpatrick, as executor of Jane Taylor, on the note for $109.90, given by her to plaintiffs on 27th April, 1888. Judgment by default was entered 6th February, 1891, for $125.56, and costs. Execution was issued same day and was levied 5th November, 1891, on the 200 acres devised to Hannah Kirkpatrick as the lands of Jane Taylor, deceased. No sale was made under this levy. A like levy was again made on this same land on 16th September, 1893. Thereupon Hannah Kirkpatrick commenced her action against L. A. and T. H. Brock and the sheriff to enjoin a sale under this levy, alleging, among other things, her exclusive possession of this land since her mother's death, the possession by the testatrix at her death of other property sufficient to pay all of her debts, and the pendency of the case of Hughes *v.* Kirkpatrick. Mr. Justice McGowan granted a temporary injunction on 23d September, 1893, which was continued by Judge Wallace on 11th October, and made perpetual by Judge Klugh by an order which bears no date, as printed in the "Case" for appeal; but Judge McDonald says this order was made in October, 1898. This last order, however, was made "without prejudice to any rights which defendants have to bring an action for the purpose of subjecting plaintiff's said land to the payment of the said debt evidenced by said judgment." Meantime, on 28th February, 1893, the probate judge, in the case of *Hughes* v. *Kirkpatrick,* had declared that the executor was insolvent, and directed him to turn over all the uncollected assets of the estate, and that all persons indebted should pay their debts into the probate court. And on 20th February, 1895, on petition by the executor for a discharge, the probate court fixed 21st March as the day for a hearing, and notice was duly published. The act (Code Proc., sec. 41), requires a publication of this notice to be for "at least one month." This means a calendar month, and, therefore, from 21st February to 21st March is "one month," within the meaning of the statute. *Williamson* v. *Farrow,* 1 Bail., 615; *Sheets*

v. *Selden's Lessee,* 2 Wall., 189; Story Prom. Notes, sec. 213.   On the day appointed, the executor, with his attorney, appeared.   The judge of probate took up the matter, recited the proceedings and adjudications in the case of *Hughes* v. *Kirkpatrick,* and made a statement of receipts and disbursements by the executor, adding interest charges and deducting commissions, and making statement of the claims outstanding against the estate, including "judgment of L. A. & T. H. Brock, $141.81, interest on $126.56 from February 6, 1891, $35.80—$177.61."

The probate judge, on 6th April, 1895, made a certified transcript of the claims allowed by him in the proceedings before him on 21st March, filed the same on the docket of judgments in his office and a transcript in the office of the clerk of the Court of Common Pleas, for Abbeville County, and on the same day issued his execution for these several amounts.   Code Proc., sec. 69.   One week thereafter a return of *nulla bona* was made by the sheriff on this execution.   No return of *nulla bona* was ever made on the former execution issued from the Court of Common Pleas.

Four years afterwards, on 21st April, 1899, the plaintiffs commenced this action against Hannah Kirkpatrick and Annie Taylor, to subject to the payment of plaintiffs' debt the two parcels of land devised to the defendants.   They alleged the judgment recovered by them in the court of probate on a debt of the testator, upon which they had previously recovered a judgment in the Court of Common Pleas, the issue of execution by the probate court and the return of *nulla bona* thereon, the death of Jane Taylor, the qualification of her executor, the devise to defendants, their possession of the land, and that the plaintiffs had made every effort but without success to recover from the executor. The complaint invited other creditors to join with plaintiffs in this action.   To this complaint the defendants answered, and at the hearing moved to dismiss the complaint on the ground that it failed to state facts sufficient to constitute a cause of action.   Plaintiffs also demurred to certain of the

defenses set up by the answer. These pleadings are fully printed in 60 S. C., at pages 322, 328, 38 S. E., 779. The case was heard by Judge Gage on these demurrers. His decree and the judgment of this Court on appeal settled these points: 1. That the complaint alleged not only the judgment, but also, sufficiently, the note which had been sued to judgment, so that defendants could plead any defense to which the note was subject. 2. That it was not an action on a judgment, and, therefore, leave to sue was not necessary. 3. That plaintiffs had the right to have their debt paid out of any assets of testatrix without regard to a consequent derangement of testatrix's intended distribution. 4. That plaintiffs had the right to seek a recovery on their claim either under action against the executor individually or against these defendants as devisees. 5. That the statute of limitations did not begin to run in favor of defendants under this action until a return of *nulla bona* on an execution issued to enforce the judgment obtained against the executor of the testatrix, and that the lands of testatrix in the possession of these defendants were not leviable under this execution. The question of homestead raised by the answer was left open, and seems not to have been again urged.

The case next came up before Judge Townsend, under order submitting the issue of title to a jury for trial, and on appeal to this Court, it was again held that the statute of limitations commenced to run in favor of defendants only from a return of *nulla bona* on execution issued to enforce the judgment alleged to have been entered against the executor. It was also held that there was no issue of title involved requiring a trial by jury, as matter of right, the action being purely equitable. See 69 S. C., 231.

The case was returned to the Circuit Court, where testimony was taken before the master under an order of reference to hear and decide all equitable issues. The several judgments and proceedings above stated were introduced in evidence and there was some oral testimony, but the original

note of Jane Taylor was not produced nor loss of it proved. L. W. Perrin, Esq., the master, reported: 1. That the probate court had jurisdiction to render the judgment of 6th April, 1895, in favor of L. A. & T. H. Brock against R. T. Kirkpatrick, as executor. 2. That the note not having been produced, no valid debt against the testatrix had been established, the judgments against the executor not being evidence of such indebtedness as against the devisees. 3. That plaintiffs had not lost their rights in this action by reason of their laches. The correctness of these findings and of the reasons of the master therefor was questioned by numerous exceptions taken by both plaintiffs and defendants. Upon these exceptions the case was heard at the regular term of Court for Abbeville County, in October, 1904, Hon. J. E. McDonald, special Judge, presiding. In a very carefully prepared decree, and with a full consideration of authorities, Judge McDonald overruled the master's first ruling, sustained the second, and overruled the third, thus decreeing that there was no valid judgment by the probate court on 6th April, 1895, that the debt was not proved, and that plaintiffs by laches had lost their right of action. He, therefore, gave judgment dismissing the complaint. From this judgment, the plaintiffs have appealed to this Court. We agree with Judge McDonald, "that all of the issues raised by the pleadings, which were not necessarily and specifically passed upon by the Supreme Court on the two appeals herein," were still open for adjudication by him.

The first exception by plaintiffs is to an order of Judge Klugh ordering the case transferred to calendar 1, for the purpose of trying the plea of adverse possession set up in the answer of defendants. As this trial has been had and a verdict rendered in favor of plaintiffs, it is now, at plaintiffs' instance, a speculative question, and besides, comes too late after the hearing on the former appeal. See *Brock* v. *Kirkpatrick*, 69 S. C., 231, 235.

The exception as to Judge Klugh's refusal to sustain plaintiffs' demurrer to so much of defendants' answer as set

up the right of homestead, cannot be sustained, for the reason that such demurrer had been already sustained by Judge Gage to the claim on the grounds that the facts as stated in the answer were not sufficient, reserving further consideration when sufficient facts were stated. No amendment to this defense has ever been made.

The first exception to Judge McDonald's decree complains that the Circuit Judge erred in saying that the Hughes case was begun in the Court of Common Pleas, whereas, it was in the court of probate. This was an inadvertent misstatement which in no way affects the judgment.

The remaining thirty-four exceptions will all be disposed of in the further consideration of this appeal.

It has been already adjudicated in this case that plaintiffs' right of action against the devisees arose on return of *nulla bona.* A return of *nulla bona* that would authorize action can be made only on execution issued to enforce a valid judgment in favor of plaintiffs. It is conceded that the only return of *nulla bona* was made on execution from the probate court. Where that Court has rendered a valid judgment and it has been duly transcribed and entered in his court and in the Court of Common Pleas of the county—all of which was done in this case—an execution may be issued by the probate judge, directed to the sheriff, to enforce the judgment. Code Proc., sec. 69. So that the existence of a valid return in this case depends upon the validity of the probate court judgment.

That judgment does not purport to have been rendered in the case of *Hughes* v. *Kirkpatrick,* as appellants contend, but in an *ex parte* proceeding for settlement and discharge instituted by the executor, at the hearing of which no one was present except himself and his attorney. It is true that the probate judge states the case of *Hughes* v. *Kirkpatrick,* but only as a recital of the principles established in that case and as his guide in making this final settlement. It has been held by this Court that a creditor cannot bring action in the court of probate for the mere recovery of his debt.

*Haley* v. *Thames,* 30 S. C., 270, 9 S. E., 110. Also, that a claim presented and allowed in a proceeding in the court of probate to sell land, in aid of assets, which necessarily involves the ascertainment of personal assets and liabilities, the administrators and heirs being parties by summons served, and creditors being called in, is a binding judgment. *Dyson* v. *Jones,* 65 S. C., 308, 43 S. E., 667. Does the same principle apply to the determination by the probate court in this case, that the estate of Jane Taylor was indebted to these plaintiffs for the amount stated in the *ex parte* proceeding on 21st March, 1895? We think it does, so far as plaintiffs and executor are concerned.

By law, the executor is required to call upon all creditors to present their claims against the estate for settlement. Whether he did so or not and whether these plaintiffs presented to him their note or a copy of it duly verified within the year, does not appear. But it was afterwards presented by summons and complaint against the executor and judgment rendered thereon in the Court of Common Pleas. Thereafter, the executor and plaintiffs were estopped from disputing the debt or the amount of it as ascertained by that judgment. When, therefore, the executor applied for his discharge, he was bound to render an account and on such accounting to include this judgment as a liability of the estate, established by the judgment of the Court of Common Pleas—a claim the amount of which these plaintiffs were estopped from disputing. In passing upon the account so admitted it was the duty of the probate court, under its constitutional "jurisdiction in all matters testamentary and of administration," to allow it as a valid indebtedness, and to so adjudicate, and this was done. Such adjudication in this case was not invalid for insufficiency of form and statement. *Bankhead* v. *Good,* 56 S. C., 393, 34 S. E., 689. This statement of indebtedness, however, was of no effect as against the devisees of Jane Taylor, who were not parties to the proceeding. But it was an ascertainment and allowance of a debt against the executor, and through him against

the estate which he represented, because an adjudication that the estate of testatrix was indebted to plaintiffs on the debt presented by him to the extent that they made claim thereon, and the benefit of which they could, therefore, assert and enforce.

We find no decision in the Courts of this State which has precisely ruled upon this question, and in its consideration we have limited ourselves to the facts of this case—a claim due by testatrix in her lifetime, established against her estate by judgment duly obtained against her executor, presented by the executor to the probate judge on statement made by executor of assets and liabilities on his *ex parte* application for final discharge, and the allowance by the probate judge in specific amount of judgment as a debt due by the estate, followed by formal judgment of the probate court in favor of plaintiffs, and execution thereon. We do not consider the claim of any other creditor because no other creditor has properly made himself a party to this action.

The duties of an executor are to collect personal assets, pay debts and their legacies. He is required to publish a notice to creditors to present their claims to him duly verified. The probate court has "jurisdiction in all matters testamentary and of administration." The executor is authorized to apply to the probate court for a final discharge, but must then account for all his receipts and disbursements, and, if legatees are to be affected, must make a statement of all outstanding debts which have been presented to him and unpaid. The judge of the probate court must pass upon the correctness of every item of this return. And as against debts due by his testatrix in her lifetime, the executor represents the estate and occupies an adversary position towards the creditors. And the claim in this case against the deceased having been already reduced to judgment at the instance of the plaintiffs and by the default of the executor, and such judgment then allowed as a debt due by the estate and enrolled as a judgment, it became a judgment of the

probate court against the personal estate of testatrix of which the plaintiffs, who presented the claim, could avail themselves, the sufficiency of which in amount they were estopped from denying. *O'Brien* v. *Heeney,* 2 Edw. Ch., 245. To the facts of this case the principle decided in *Dyson* v. *Jones,* 65 S. C., 308, 43 S. E., 667, should be extended. This ruling is in accordance with the decision made in some other Courts, where the constitutional and statutory provisions are substantially the same as those of this State. *Carter* v. *Engles,* 35 Ark., 205 ; *Tate* v. *Norton,* 94 U. S., 746 ; *Mason* v. *Blair,* 33 Ill., 206 ; *Mitchell* v. *Mayo,* 16 Ill., 84 ; *Ford* v. *Newcomer,* 14 La. Ann., 707 ; *Johnson* v. *Waters,* 111 U. S., 671 ; *Thayer* v. *Clark,* 48 Barb., 245 : *Lewis* v. *Welch,* 47 Minn., 197 ; *Bennett* v. *Camp,* 54 Vt., 36 ; Freem. Judg., sec. 319a, and note 3 ; 2 Black Judg., secs. 641, 644.

We think there is error, also, in the Circuit decree as to the sufficiency of the evidence offered to establish the existence of the debt against the testatrix. We agree with the Circuit Judge that "the alleged judgment against the executor certainly has no force or effect so far as the defendants are concerned, because they were neither parties nor privies to it." This is substantially the ruling of the Court in *Wilson* v. *Kelly,* 19 S. C., 166-7, and *Brock* v. *Kirkpatrick,* 60 S. C., 351, 38 S. E., 779. To make the devised estate answerable for the debt of the devisor, there must be evidence offered to show that the devisor was indebted. If such indebtedness is shown by bond or note, the bond or note is *prima facie* evidence of the indebtedness. If judgment has been obtained against the executor on the bond or note, such judgment establishes the debt against the personal estate of the deceased debtor and also against lands not taken possession of by the devisees, but is not binding upon the devisees nor upon the devised lands in their exclusive possession. Nevertheless, such judgment is *prima facie* evidence of indebtedness by the devisor, and if there be no evidence to the contrary it is conclusive. "Between the real and personal

representative of a deceased person there is no privity. Hence a judgment against an administrator or executor is never conclusive against the heirs or devisees, and a judgment for or against an heir or devisee has no effect upon an arministrator or executor. * * * But a judgment against the personal representative is *prima facie* evidence against the realty." Freeman on Judgments, sec. 163. "The relationship of privity does not exist at common law between administrator or executor and heirs or devisee; though it is held that judgment against the executor is *prima facie* evidence of the testator's liability in a *scire facias* against the heirs to subject the lands in the hands of the heir." Bigelow Estoppel, 78. As "the proceeding against the executor is in substance the foundation of the proceeding against the heir or devisee, the argument for considering it as *prim 1 facie* evidence may be irresistible; but I cannot consider it as an estoppel." Chief Justice Marshall, in *Garnett* v. *Macon,* 6 Call., 308; 10 Fed. Cas., p. 23, first column.

We have carefully examined all of the authorities cited by the Circuit Judge to sustain his decree, and by respondents' attorneys, but none of them go further than to hold that the judgment against the executor does not bind the heirs or prevent an inquiry into their original indebtedness. In *Wilson* v. *Kelly,* 19 S. C., 160, 167, the Court says: "The judgment is at most only *prima facie* evidence of the validity of the claim, which is liable to be overcome by other evidence."

Our judgment, therefore, is that the judgment of plaintiffs against the executor should have been received as *prima ft cie* evidence of the indebtedness by testatrix.

The only remaining point raised by the exceptions relates to defendants' plea of laches, which was sustained by the Circuit decree. The judge below and the attorneys for respondents in their argument in this Court concede that plaintiffs have shown no laches in prosecuting their claim against these defendants as devisees. Therefore, the precise question before us is whether the

plaintiffs have lost their right of action against the devisees by their laches in seeking to recover their claim from the executor. It has been held in this case, in 60 S. C., 322, 330, 38 S. E., 667, that the plaintiffs had the right to pursue either executor or devisees, but this does not dispose of the question now under consideration.

In *Smith* v. *Collins,* Bail. Eq., 73, 75, Judge Johnson says: "The right of a creditor to pursue the estate of his deceased debtor in the hands of legatees or distributees is unquestionable. * * * But in giving effect to this right, however just it might be in the abstract, the Court is bound to take care that it is not abused, nor suffered to operate injuriously to others, and that the creditor has himself done all that reciprocal justice requires of him." In that case the debt was contracted in 1794, debtor died in 1801, estate distributed in 1805, without notice of this indebtedness, suit commenced in 1811 when executor was insolvent, and revived in 1822, and this action commenced against legatees in 1824. The Court presumed a release of the legatees from the obligation to contribute.. And in *Goodhue* v. *Barnwell,* Rice Ch., 198, 240, Chan. Dunkin says: "Certainly the personal estate is the primary fund for the payment of debts; and if a creditor stands by and suffers the personal estate to be squandered, he will not be afterwards permitted to look to the heirs for the payment of his demand." This is quoted with approval in *Bird* v. *Houze,* Speer's Eq., 254.

Chief Justice Simpson says, in *McGee* v. *Hall,* 26 S. C., 179, 186, 1 S. E., 711: "Laches may be regarded as an equitable statute of limitations, and is applied to equity cases in analogy to legal statutes applied to cases at law. And generally, when a party would not be barred at law he would not be barred in equity."

In *Babb* v. *Sullivan,* 43 S. C., 436, 441, 21 S. E., 277, Judge Benet gives the following definition of laches: "Delay is not the sole factor that constitutes laches. If it were so, some period fixed by statute or by common law of the courts would afford a safe and unvarying rule. Laches con-

notes not only undue lapse of time, but also negligence, and opportunity to have acted sooner; and all three factors must be satisfactorily shown before the bar in equity is complete. Other factors of lesser importance sometimes demand consideration—such as the nature of the property involved, or the subject matter of the suit, or the like. As a definition of laches, however, it is sufficiently correct to say that it is the neglecting or omitting to do what in law should have been done, and this for an unreasonable and unexplained length of time, and in circumstances which afforded opportunity for diligence." This definition was approved in *Wagner* v. *Sanders,* 62 S. C., 73, 89, 39 S. E., 950, in opinion delivered by Mr. Justice Gary. In the application of these principles, the Court sustained the plea of laches against a claim nineteen years past due with the same lapse of time since the death of the debtor, and where the creditor, after the alleged indebtedness, permitted slaves of the debtor to be turned over to her husband, no effort being made in all these years to collect this claim. *Goodhue* v. *Barnwell,* Rice Ch., 240.

In *Bird* v. *Houze,* Speer Eq., 250, intestate died in 1828, and his heirs took possession of his lands. On 31st December, 1830, the creditor presented to the administrator for payment a note of intestate past due since 5th January, 1826. In October, 1832, the ordinary declined to allow the note, "as it was out of date," whereupon the creditor sued the administrator in summary process and obtained judgment by default in December of same year. Nothing more was done until 1841, when the judgment was revived against the administrator, execution lodged March, 1842, lands of intestate levied on and bid in by creditor for $5, in April. Under bill for partition between the heirs, this sale was set aside, and the creditor was held to have lost all rights against the heirs.

Laches was likewise imputed to a creditor where intestate died in 1854, distribution was made in 1855, leaving a large quantity of personalty in the hands of the administrator to pay debts, suit was brought by creditor against administrator

in 1860, and judgment by default then entered and execution issued, upon which a return of *nulla bona* was made in 1868, when bill was filed to reach lands of intestate in the possession of his heirs. Both of the administrators had died insolvent, one in 1866 and the other in 1868. *Mobley* v. *Cureton,* 2 S. C., 140. So, too, where no effort was made to collect the claim and, indeed, no claim made for nearly seventeen years after the death of the debtor. *Gregory* v. *Rhoden,* 24 S. C., 90. So, too, the doctrine of laches applied in refusing relief under a motion to amend a judgment after an unexplained delay of about ten years (*Babb* v. *Sullivan,* 43 S. C., 436, 21 S. E., 277), and under action of account against the representatives of a surviving partner after twenty-three years, without reason for delay and the interests of other parties having intervened. *Wagner* v. *Sanders,* 62 S. C., 73, 39 S. E., 950.

On the other hand, there was held to be no laches where debtor died in 1865, notes made by him purchased in 1875, which were sued to judgment against the executor in 1881, and presented as a claim in proceeding to sell land in aid of assets instituted by the executor in 1883, even though in 1880 the land had been mortgaged by one of the heirs. *Shaw* v. *Barksdale,* 25 S. C., 207.

We have not considered cases of specific performance, as they are governed by principles peculiar to themselves.

Under the principles above announced and deducible from the rulings made on the facts of the several cases cited, we do not think the plaintiffs in this case are barred by laches, and we so hold. Testatrix died 15th December, 1888, less than eight months after she had given her one day note to plaintiffs. All of the property of testatrix, which could be reached by execution against the executor (other than the lands devised to these defendants), was converted into money before the year expired, during which action on this note could not be brought. Within less than twelve months after that year expired, to wit: on 3d December, 1890, action was commenced under which judgment by default was en-

tered against the executor on 6th February, 1891, and execution issued same day. Nine months afterwards, this execution was levied on the lands devised to Hannah Kirkpatrick. No sale was made or attempted to be made under this levy. No reason is given for this non-action, but at that time there was pending, and had been pending in the probate court since August, 1890, a proceeding to which creditors were not parties, but which involved a construction of the will, a claim of $500, presented by Annie Taylor for services rendered testatrix, the amount chargeable against the executor for the land purchased by him, the value of the tracts of land conveyed to the children by the deeds made but not delivered, which were treated as advancements, an accounting by the executor and the payment into Court of the amounts due the several legatees. These matters were considered by the probate judge in May, 1891, heard by the Circuit Court the following month, and on appeal to this Court was heard April term, 1892, and decided by opinion filed September 20, 1892. See 37 S. C., 161, 15 S. E., 912. In that same case, on 28th February, 1893, the probate judge filed an order, wherein he recited that it had "been made to appear that the executor is insolvent and not able to pay in the funds belonging to the said estate which is in his hands," and directed all persons indebted to said estate to pay all "said debts into this court." On September 10, 1893, a second levy was made under the execution of L. A. & T. H. Brock against Kirkpatrick, executor, on the same tract that had been levied in November, 1891.

We find no blamable delay on the part of plaintiffs in awaiting for nearly two years the result of the case of Hughes against Kirkpatrick, which, if the executor was solvent and honest, would require the payment of their claim before distribution was made. And we see in the case no evidence to show that the defendants here have been put in any worse position by plaintiffs' failure to proceed personally against the executor, declared to be insolvent in February, 1893, and there is no evidence that any creditor of the estate

or any legatee has received one dollar since 1889. We think the conclusion is fully warranted that at no time would anything have been realized by action against the executor. Under the levy of September, 1893, no sale was made because enjoined by suit commenced the same month by Hannah Kirkpatrick, which action was ended by perpetual injunction in October, 1898, without prejudice to plaintiffs' right to bring this action. Meantime, under petition by the executor for settlement and discharge, the probate judge made his statement on 21st March, 1895, of the executor's receipts and disbursements and of the liabilities of the estate. Judgment was enrolled thereon and execution issued, upon which was indorsed a return of *nulla bona* on 13th April, 1895. Thereafter, in April, 1899, four years after the right of action accrued and six months after it was finally decided that the lands devised to Hannah Kirkpatrick could not be sold under judgment against the executor, this action was commenced against Hannah Kirkpatrick and also against Annie Taylor, whose status was the same as that of her co-defendant.

Nor do we regard the purchase by plaintiffs of the mortgage given by the Haddons to Kirkpatrick, the executor, a bar to this action. It is true, that the executor bought this land in October, 1889, at his own sale, for $300, and sold it soon thereafter to Hadden for $1,200, taking bond and mortgage for $800. This mortgage was purchased by plaintiffs from Kirkpatrick, probably in 1890. At the time, Kirkpatrick was claiming this mortgage as his own, for he so claimed in his answer in the Hughes case in the latter part of 1890, and his liability to account for the $1,200 was not passed upon in that case. It seems to have been first charged against him at $1,200, in the statement made for settlement by the probate judge in March, 1895. We do not see how plaintiffs could have forced Kirkpatrick to receive their claim against the estate of Jane Taylor in part payment of their purchase of the Haddon mortgage.

It is the judgment of this Court, that the judgment of the

Circuit Court be reversed, and the case remanded to that Court for further proceedings to carry into effect the views herein announced.

PER CURIAM, 30th October, 1905.

After carefully considering the petition for a rehearing in this case, and it appearing that this Court has neither overlooked nor failed to consider any material issue of law or fact arising herein,

It is ordered, that the order heretofore granted staying the remittitur herein be and is hereby vacated, and that the petition herein be and is hereby dismissed.

*The* CHIEF JUSTICE *did not participate in this opinion because of illness.*