BANKHEAD v. GOOD, ADMINISTRATOR.

JUDGMENT.—A PROBATE DECREE finding a certain amount due plaintiff, "subject to legal discounts," and giving leave to issue execution thereon, upon filing in record by defendant that there are no legal discounts, becomes a final judgment from that date.

Before GAGE, J., Cherokee, January, 1899. Affirmed generally, but reversed on a main issue.

Action by John E. Bankhead against C. S. Good administrator, to have one judgment set off against another. From Circuit decree, defendant appeals.

*Messrs. Witherspoon & Spencer,* for appellants, cite on point decided, Rich. Eq. Ca., 385 : *Thomas & McElwee,* 35 Strob. L., 131.

*Mr. Geo. W. S. Hart,* contra, cites on same point, 2 Pet., 465; 91 U. S., 143; 13 S. C., 260; 10 Wall, 583; 1 McC. Ch., 22; 40 S. C., 211.

January 3, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. On the 3d of August, 1878, Eggor

A. Bankhead, by his *guardian ad litem,* recovered judgment against John B. Good, his guardian. It was written at the foot of an account stated and concludes as follows: "Balance, $1,273.08; one-third to each ward, $424.36. The guardian, John B. Good, failing to appear pursuant to notice, it is ordered, adjudged and decreed: 1. That he be removed from his trust, and his letters of guardianship for Eggor A., James E., and Mary E. Bankhead, be, and the same are hereby, revoked. 2. That he do pay to each of said wards the sum of $424.36—the said amounts to be paid into this Court for said wards. 3. That the said wards, through their guardian *ad litem,* J. M. McCullough, have leave to issue execution for the said amounts so respectively found due, as also for costs, subject to any legal discounts." In his decree, his Honor, the Circuit Judge, says the plaintiff's counsel in that suit, and now, stated in open Court that the Probate Judge added the words, "subject to any legal discounts," of his own motion and against the protest of counsel. On the 31st of August, 1878, execution was issued upon said judgment, and under it certain real and personal property was levied upon and sold. The following appears in the record: "It is admitted that John B. Good, being at that time represented by counsel, made in writing the agreement and admission mentioned in the decree of Judge Gage, and that the same was filed in the record in the Probate Court for York County of his administration as guardian of said wards and of the proceedings against him for accounting." The agreement just mentioned contained, among other things, an admission that Good was indebted to his ward in a sum not less than that stated in the said judgment. On the 28th of March, 1891, the said judgment was assigned to the plaintiff as a gift. Jno. B. Good died in July, 1891, and the defendant is his administrator. On the 9th of April, 1883, Jno. B. Good recovered judgment against the plaintiff in an action in the Court of Common Pleas for York County for $86.39 and costs. The plaintiff seeks to have one judgment set off against the other. The Circuit

Judge ruled that the instrument of writing signed by the Probate Judge was not a final judgment. He, nevertheless, for the reasons stated in his decree, allowed the set off for which the plaintiff prayed.

From the said decree the defendant appealed upon an exception alleging error as follows: "Error in not sustaining defendant's plea that plaintiff's cause of action was barred by the statute of limitations; and in this connection, error in holding that the limitation period applicable to plaintiff's supposed set off against the judgment of defendant's intestate was twenty years; and in not holding that it was six years, or ten years at most, and that more than six years and more than ten years had elapsed before action commenced." The respondent also gave notice that he would rely upon additional grounds in support of the decree, one of which was that his Honor, the Circuit Judge, erred in holding that the instrument of writing hereinbefore mentioned was not a final judgment. We will first consider the question whether the said instrument of writing was a final judgment. In the case of *Ex parte Farrars,* 13 S. C., 254, Mr. Chief Justice McIver quotes the following language from 2 Wms. on Ex'ors: "If a decree be not conclusive of the matters in question, as if it be merely to account and do not ascertain the sum to be paid, it is analogous to a judgment *quod computet* at law, and that is no complete judgment till the account be stated"—citing *Smith* v. *Eyles,* 2 Atk., 385. Continuing, he says: "Such a decree is like an interlocutory judgment at law which has been held in the case of *McIntosh* v. *Wright,* Rich. Eq., 385, not to be such a judgment as is contemplated by the act of 1789, Gen. Stat., 457. To give it such a character it must be a final decree, and by that we understand (speaking of a money decree) such a decree as not only ascertains that a definite sum of money is due from one party to another, but orders the payment of the same. It must be such a decree as will authorize the issuing of an execution for its enforcement. As is said in *Haskell* v. *Raoul,* 1 McC. Ch., 32, a decretal order upon which an exe-

cution may be taken out, is a final decree." In the case of *Forgay* v. *Conrad,* 6 How., 201 (cited with approval in *Ex parte Farrar*), the Court says: "When the decree decides the right to the property in contest and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, *or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution,* the decree must be regarded as a final one to that extent, and authorize an appeal to this Court, although so much of the bill is retained in the Circuit Court as is necessary for the purpose of adjusting, by a further decree, the accounts between the parties, pursuant to the decree passed." This rule was reaffirmed in the subsequent case of *Thomson* v. *Dean,* 7 Wall., 342. In the case of *Stovall* v. *Banks,* 10 Wall., 583, the Court uses this language: "We do not overlook the fact that in this instance the Court, after having determined the sum due to each of the complainants and directed its payment, and after having awarded execution, went on to direct that the administrator be allowed as payment to the respective parties, to be deducted from the amounts therein adjudged to them, the principal and interest of any note held by him against either of them. It also directed that the several shares of the parties to whom the estate was awarded should be subjected to ratable deduction for fees yet unpaid for the collection of notes belonging to the administrator. But we think the decree was not, for this reason, the less final. Even if the sum decreed was left indeterminate, it was certainly adjudicated that the complainants were entitled to participate in the distribution, and the extent of their interest defined. But it does not appear that there were any unpaid fees, or that the administrator held any notes against either of the distributees. All that these parts of the decree meant, therefore, was either direction to the sheriff respecting the execution of the *fi. fas.,* or liberty to the defendant to move for a modification of the decree—a motion never made. Plainly they were not intended to pre-

vent the enforcement of the decree by executions against the administrator, for such executions were expressly allowed. It is not unusual in courts of equity to enter decrees determining the rights of parties, and the extent of the liability of one party to the other, giving at the same time a right to apply to the Court for modifications and directions. It has never been doubted that such decrees are final * * * In Daniel's Chancery Practice, the effect of allowing the privilege of making such applications to the Chancellor, is stated to be no alteration of the final nature of the decree. Says the author: 'A decree, with such a liberty reserved, is still a final decree, and, when signed and enrolled, may be pleaded in bar to another suit for the same matter.' So, in *Mills* v. *Hoag,* it was said that 'A decree is not the less final in its nature, because some future orders of the Court may possibly become necessary to carry such final decree into effect.' In the case before us no future orders were necessary. The decree was ripe for execution, and execution was ordered." These quotations show that the Supreme Court of the United States has gone further than we propose to go, or find it necessary to go in this case. The following comment upon the case of *Stovall* v. *Banks* was made in *Ex parte Farrar,* to wit: "The case of *Stovall* v. *Banks,* 10 Wall., 583, to which our attention has been especially invited by the counsel for the respondents, does not, in any wise, conflict with the views hereinbefore expressed; for in that case the decree *not only determined the sum due to each of the complainants and directed its payment, awarding execution therefor, but the execution was actually issued."* The case of *Atherton* v. *Fowler,* 91 U. S., 143, is thus commented upon in *Ex parte Farrar,* to wit: "That was a case in which the Supreme Court of California reversed the judgment of the inferior Court, and directed a modification thereof as to the amount of damages, but without permitting further proceedings below, if the defendants consented to the modification, and the record showed that such consent was given before the writ of error was taken out * * * When such consent was

given, as was done before the writ of error was taken out, there was a final termination of the case, and there was nothing further for the Court to do, and the judgment was, therefore, a final judgment.    But if the consent had not been given, or until it was given, there was no judgment, either final or otherwise.    It was, practically, therefore, nothing more than an order for a new trial *nisi,* the plaintiff would remit a part of the damages recovered; upon such remittitur being entered, the judgment would become a final one, as nothing would be left for the Court to do."    In Black on Judgment, section 25, the author says : "So a decree in chancery, which adjudges a certain sum of money to be due from the defendant, and awards execution to collect it, is a final decree, notwithstanding it also allows as payment to be deducted from the amount therein adjudged, any note held by the defendant against the complainant."    In the case under consideration it appears : 1. That a certain and definite sum was adjudged to be paid by Jno. B. Good to Eggor A. Bankhead.    2. That the right to issue execution was conferred in said judgment.    3. That execution was issued upon said judgment, and certain real and personal property levied on and sold.    4. That about a year after said judgment was rendered, Jno. B. Good filed with the records of the case in the Probate Court, a statement in writing to the effect that there were no legal discounts, whereupon the judgment became final.    5. That the said judgment was not assigned to the plaintiff till 1891, and when the admission was filed with the record the rights of third parties had in nowise become involved.    Even conceding that the instrument of writing signed by the Probate Judge was only an interlocutory order in the first instance, it can not be doubted that it would have become final if there had been a judicial ascertainment that there were no legal discounts in favor of John B. Good. The solemn admission in writing on the part of John B. Good, filed in the records of the case, that there were no legal discounts in his favor, had the same effect.    It was practically a consent of record that the judgment was final, as

nothing further remained to be done. Testing this case by the rule laid down in *Ex parte Farrar,* and the cases hereinbefore mentioned, it will be seen that the judgment was final, and his Honor, the Circuit Judge, erred in not so holding.

The appellant's exception was predicated upon the fact that the said judgment was not final, and as this Court has reached a different conclusion as to that question, it becomes unnecessary to consider the question raised by the exception.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.