## WAGNER v. SANDERS.

1. PARTNERSHIP.—FINDING OF FACT by Circuit Judge, that partnership did not exist as to the plantation and personal property in question, reversed.

2. PLEADING—MOTION TO SUSTAIN DECREE ON OTHER GROUNDS—COURT'S OWN MOTION.—LACHES may be set up by the Court without being pleaded by defendant, and without motion of respondent to sustain decree on that ground, and so applied, the complaint is dismissed because of long and unexplained delay in bringing suit, and the intervening of interests of third parties. Doctrine of laches discussed.

Before GARY, J., Charleston, October, 1900. Affirmed.

Action for accounting of partnership assets by Julia E. S. Wagner, in her own right and as administratrix of Levi P. Wagner, William Wagner, Max Wagner, and Clement Wagner, against Joshua C. Sanders, H. G. Leland and J. B. Morrison. From Circuit decree, dismissing complaint, plaintiffs appeal.

*Mr. J. K. P. Bryan,* for appellants, cites: *Defense of statute of limitations is unavailing:* 3 McC., 455; 2 N. & McC., 259; 41 S. C., 355; 31 S. C., 353; 35 S. C., 430; 36 S. C., 322. *In this State, test of partnership is community of profit and loss:* 18 S. C., 233; 23 S. C., 543. *This is an express trust, in writing, and not resulting trust in parol:* 19 S. C., 126; 1 Perry on Trusts, secs. 67-8, 82-86.

*Mr. Theodore G. Barker,* for Sanders, contra, cites: *Appellants must show that findings of fact by Circuit Judge are manifestly against the overbearing weight of the testimony, or without evidence to support them:* 12 S. C., 572; 17 S. C., 495. *Copartnership cannot be shown by inferences:* 23 S. C., 543. *As to what constitutes a partnership:* 1 Par. on Con., 156, 148; 31 N. Y., 329. *As to resulting trusts:* 2 Pom. Eq. Jur., sec. 1018, p. 610; sec. 1040, p. 612; 2 Cox, 92; Lead. Ca. (4 Am. ed.), 314, 319, 322; 6 S. C., 90; 19 S. C., 126. *Any interests that plaintiffs may have had are now lost by laches:* Hill on Trusts, 265; 6 S. C., 90. *Participation in profits does not, per se, constitute a partnership:* 18 S. C., 222; *King* v. *Frazer,* 23 S. C.; 31 N. Y., 58; 97 N. Y., 159; 41 N. Y., 33; 19 Ala., 774; 67 Mo., 170; 24 W. Va., 411; 68 Mo., 342.

October 30, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. This action was commenced in April, 1895, by the plaintiff, Julia E. S. Wagner, administratrix of the estate of Dr. Levi P. Wagner, deceased, and in her own right as distributee and heir at law of said Levi P. Wagner, and her children, as such distributees and heirs at law, against Joshua C. Sanders, H. G. Leland and J. B. Morrison, defendants.

The complaint, omitting the formal portions thereof, alleges:

"1. That on the 19th day of December, 1868, defendants, Joshua C. Sanders and Levi P. Wagner, now deceased, as

copartners in planting interest, purchased a certain planta-
tion in Charleston County, described in the complaint for-
merly known as 'Doe Hall' and now styled 'Bay View,' to-
gether with tools, implements and other personal property.

"2. That the purchase money of said plantation was paid
by the said Levi P. Wagner, and the deed therefor taken in
the name of Joshua C. Sanders, for the purpose of such part-
nership; same being in equal shares and interest among said
copartners, which deed was dated 19th December, 1868.; and
that such property and all other property and assets was con-
tinued in the name of Joshua C. Sanders and as property of
such copartnership, until the death of the said Levi P. Wag-
ner, on October 24th, 1872.

"3. That the said partnership affairs have never been set-
tled by the said Joshua C. Sanders, and the said Joshua C.
Sanders has not accounted for the assets of the same at any
time; and although demanded thereto by the plaintiff, Julia
E. S. Wagner, on the          day of February, 1895, has re-
fused and neglected to account, in disregard of his duty and
trust as such surviving copartner.

"4. That by deed dated 30th December, 1890, said
Joshua C. Sanders, defendant, conveyed said plantation and
also all the personal property thereon, being a part of the
partnership assets, including mill for ginning, wagons,
carts, engines, boilers, hoes and other implements, to the de-
fendant, H. G. Leland, for the consideration of $6,000.

"5. That on the 2d day of January, 1891, defendant,
Horace G. Leland, executed his bond to the said Joshua C.
Sanders in the sum of $4,800, in part payment of the pur-
chase money of the said plantation and personal property,
and secured the same by his mortgage of said property of
the same date to the said J. C. Sanders, which is not paid
and is now past due and owing.

"6. That on or about the 24th day of October, 1894, said
H. G. Leland conveyed said plantation and personalty to the
defendant, J. B. Morrison, subject to the said mortgage and

mortgage debt of $1,800, and interest thereon as therein stated.

"7. Plaintiff's claim that the said bond and mortgage executed by the said defendant, H. G. Leland, to the defendant, Joshua C. Sanders, and now past due, is a portion of the property of the plaintiffs, to which, and proceeds of which, these plaintiffs are solely entitled upon foreclosure thereof."

The prayer of the complaint is as follows:

"1. That the said Joshua C. Sanders be required to account for all and singular the assets of the (alleged) copartnership heretofore existing between himself and Levi P. Wagner, and that said copartnership be wound up and settled under direction of this Court, and that their share of its assets be decreed plaintiffs herein.

"2. That said mortgage be foreclosed and premises sold, and proceeds to amount due on the bond aforesaid be decreed to belong to and to be paid wholly to the plaintiff herein, according to their respective interests.

"3. For an injunction pending this suit, enjoining the defendant, Horace G. Leland, or J. B. Morrison, from paying over any amount due on such bond to said defendant, Joshua C. Sanders, or any other person.

"4. For such other and further relief as this Court may deem just and proper, and to which plaintiffs may be equitably entitled."

Immediately upon the filing of the complaint, the plaintiffs, on an *ex parte* application, obtained a temporary order of injunction.

The defendants, H. G. Leland and J. B. Morrison, answered the complaint, denying the allegations thereof as to a partnership between Joshua C. Sanders and Dr. L. P. Wagner, and setting up as a defense that they were purchasers for valuable consideration without notice. The defendant, Joshua C. Sanders, also answered the complaint, denying all its allegations except certain immaterial portions which it is not necessary to mention, and setting up the following defense:

"That after the death of the said Levi P. Wagner, the said plaintiff, Julia E. S. Wagner, his widow, recognizing the absolute and exclusive right and title of this defendant to and in the plantation mentioned and described in paragraph first in said complaint, formerly known as 'Doe Hall' and now styled 'Bay View,' and to and in the personal property on said plantation, including saw mill, corn mill, steam engine and other machinery, also horses, mules, cattle, farming utensils and other implements, on the 24th day of December, in the year 1872, made and entered into an agreement in writing, under her hand and seal and under the hand and seal of this defendant, for the purchase of said plantation and personal property, whereby this defendant, Joshua C. Sanders, for and in consideration of the sum of $6,000 to be paid to him by said Julia E. Wagner, and of the assignment to be made to him by her as administratrix of a certain judgment in favor of said Levi P. Wagner and against Isaac F. Hunt, Jacob Hunt and others, obtained in March, 1871, in the Court of Common Pleas for the county of Charleston, S. C., agreed to sell and convey unto the said Julia E. Wagner said plantation and property, and by said agreement the plaintiff, Julia E. Wagner, agreed to purchase said plantation and personal property, and to pay therefor the consideration above mentioned. That the plaintiff, Julia E. Wagner, failed to fulfill the terms of her said agreement of purchase, and this defendant, upon her default in paying the first instalment of said purchase money, instituted suit against her in the Supreme Court of New York to enforce performance thereof, and obtained judgment against her in the Supreme Court of New York on the 26th day of September, 1877, for the sum of $2,398.95, which debt has never been paid. That said plaintiff had also failed to assign the judgment recovered by Levi P. Wagner against Hunt Bros., according to the terms of her said agreement, and on the contrary attempted to assign the same to one Harris H. Beecher, who, as assignee therefor, attempted to revive and enforce the same for the benefit of himself and in

collusion with the said Julia E. Wagner. Whereupon the
defendant instituted suit against the said Julia E. Wagner
and the said Harris H. Beecher in the Supreme Court of
New York, on the 24th day of December, A. D. 1881, to en-
join the defendants from collecting said judgment and from
assigning the same, and from farther prosecuting any action
thereon, and to require said defendant to assign said judg-
ment to this defendant. Thereupon the action so instituted
by said Beecher was discontinued. That thereafter, to wit:
on or about the 8th day of October, A. D. 1883, defendant,
at the solicitation of plaintiff, Julia E. Wagner, and her
friends, and in consideration of the assignment by her of
said judgment, and of the execution by her of a full and
general release of claim and demands whatsoever against
the defendant, satisfied upon the record the judgment in the
Supreme Court of New York for $2,398, which the defend-
ant had obtained against Julia E. Wagner, and thereupon
the said Julia E. Wagner, under her hand and seal, executed
and delivered to this defendant her general release, whereby
she did for self and her heirs, executors and administrators,
remise, release and forever discharge the said Joshua C.
Sanders, his heirs, executors and administrators, of and
from all manner of action and actions, cause and causes of
action, suit, debts, dues, sums of money, accounts, reckon-
ings, agreements, promises, variances, trespasses, damages,
judgments, extents, executions, claim and demands, whatso-
ever, in law or in equity, which against him, the said Joshua
C. Sanders, she had, now have, or which she, or her heirs,
executors or administrators, hereafter can, shall or may
have upon or by reason of any matter, cause or thing what-
soever, from the beginning of the world to the date of said
release; and particularly from any and all claims arising and
growing out of a certain contract made between said Joshua
C. Sanders and herself, dated December 24th, 1872, relative
to the purchase of the right, title and interest of the said
Joshua C. Sanders in and to a certain plantation known as
'Bay View,' in the State of South Carolina; and said Julia

E. Wagner did therein farther declare that she did thereby release and discharge all claims she may have acquired in and to said plantation, stock, etc., under and by virtue of said contract." He also pleaded the statute of limitations.

It may be well to mention here that upon the former appeal in this case (49 S. C., 192), the Supreme Court held that the complaint "contains but one cause of action, the delict or wrong of the surviving partner in refusing to account to the representatives of a deceased partner for the partnership assets * * * The ultimate rights of all the parties depend upon the partnership accounting which is sought herein."

The findings by the Circuit Judge are as follows:

"From the testimony as reported by the master, I find that the allegations of copartnership in the planting of 'Doe Hall' or 'Bay View' plantation between defendant, Joshua C. Sanders, and deceased, Dr. Levi P. Wagner, in the lifetime of the latter, is not sustained by a preponderance of evidence. I find that the relation of partnership did not exist either in the purchase of the 'Doe Hall' or 'Bay View' plantation and personal property thereon, or in the planting business which was then carried on by Dr. Wagner; and that no trust was created as to said plantation or property constituting Joshua C. Sanders as trustee thereof for the estate of Dr. Levi P. Wagner, or for his heirs or distributees at law, the plaintiffs in the action.

"I am satisfied from the evidence that 'Doe Hall' or 'Bay View' plantation and personal property thereon, was not purchased with money of Dr. Levi P. Wagner or paid for by him with his own money; that the plantation and personal property was not purchased by the defendant, Joshua C. Sanders, with the money of Dr. Levi P. Wagner, or for the benefit of a copartnership between Joshua C. Sanders and Dr. Levi P. Wagner; that Joshua C. Sanders was not the surviving copartner of the said alleged copartnership, and so I find as a matter of fact.

"In my judgment, the preponderance of the proof shows

that Joshua C. Sanders purchased 'Doe Hall' plantation and personal property thereon with his own money, and that the title thereto was taken in his name and held by him for his own use; and that the arrangement between Joshua C. Sanders for the planting and other business conducted upon the 'Doe Hall' or 'Bay View' plantation by Dr. Levi P. Wagner was that of a debtor and creditor, by which Sanders made advances or loans of money to Dr. Wagner for the expenses of the business, upon the understanding that these sums advanced were to be repaid to him by Dr. Wagner, and after the expenses of the planting were deducted from the proceeds of the sale of the crops, saw mill, etc., the remains and proceeds of the business were to be equally divided; Sanders receiving one-half of the net proceeds as compensation for his making said advances. It follows, as a matter of law, that plaintiffs are not entitled to an undivided moiety, or to any share of or interest in the 'Doe Hall' or 'Bay View' plantation, as claimed in the complaint, nor entitled in law to have an accounting from Joshua C. Sanders as surviving copartner, or as trustee of said plantation or of the personal property thereon."

The decretal part of his order is as follows:

"It is, therefore, ordered, adjudged and decreed, that the injunction heretofore ordered, which enjoined defendants, Horace G. Leland and J. B. Morrison, from paying to Joshua C. Sanders, or to any other person, the amount remaining due on or after the 22d of January, 1895, upon the bond and mortgage, be and the same is hereby dissolved; and that defendant, Joshua C. Sanders, have judgment for the amount of the said debt as may be ascertained by the master; that to this end it may be referred to Master G. H. Sass, to ascertain and report the amount due upon the bond of Horace G. Leland to Joshua C. Sanders, and that said Joshua C. Sanders have execution for the same against defendants, Horace G. Leland and J. B. Morrison, and for his costs in this action against the plaintiffs, said costs to be taxed by the clerk of this Court."

The plaintiffs appealed upon several exceptions; but it will not be necessary to consider them separately as the appellants' attorney contends that the only issue raised by the exceptions is whether a partnership existed between Dr. Levi P. Wagner and the defendant, Joshua C. Sanders, as alleged in the complaint. We proceed to consider whether there was error on the part of the Circuit Judge in his finding that such partnership did not exist.

The appellants' attorney in his argument submits that the copartnership is shown by the following evidence:

"1. By the oral testimony of plaintiff, Mrs. J. E. S. Wagner, as to declarations and admissions to her by the defendant, Joshua C. Sanders.

"2. By the articles of copartnership between one Inwood, Sanders and Wagner, January, 1866, and assignment of interest and dissolution of such copartnership, 30th April, 1866, and memorandum of new copartnership between Sanders and Wagner, 30th April, 1866, which is the basis of the copartnership now sued on."

All of these articles are signed by the defendant, Joshua C. Sanders.

"3. That this copartnership begun as to 'Tibwin' plantation, was continued as to 'Doe Hall' plantation by the admissions of Joshua C. Sanders, by testimony of Mrs. Julia E. Wagner, plaintiff, and confirmed by the letters of defendant, Joshua C. Sanders, *before* the purchase of 'Doe Hall' plantation.

"4. This copartnership was confirmed and recognized, also, by the letters of Joshua C. Sanders; also, *after* the purchase of 'Doe Hall,' in 1868.

"5. This copartnership is confirmed by the evidence of the payment of part of the purchase money by Levi P. Wagner.

"6. This copartnership is confirmed by the evidence of Joshua C. Sanders dealing with the title to 'Doe Hall' previous to the death of Levi P. Wagner.

"7. Confirmed again by the attempted settlement in 1872,

6—62

after the death of Levi P. Wagner, by Joshua C. Sanders with plaintiff, Julia E. S. Wagner, widow of Levi. P. Wagner.

"8. This copartnership is again confirmed by the evidence of release and settlement by Mrs. Julia E. Wagner and Joshua C. Sanders, in 1883."

On the 26th of January, 1866, an agreement was entered into between Benjamin P. Colburn, L. P. Wagner and Henry C. Inwood, the preamble of which was as follows: "Whereas, Henry C. Inwood and Levi P. Wagner have this day leased from Benjamin P. Colburn his sea island cotton plantation, in St. James Santee Parish, containing 1,500 acres, more or less, for the sum of $1,500 per annum, payable at such times and on such conditions as in the instrument of lease this day executed between the parties will more fully appear; and whereas, it is agreed between said parties that the said lessees shall have the right to become the purchasers of the said property at any time before the first of June next inclusive, of their intention to do which they are to give the lessor due notice." On the 30th of January, 1866, the following agreement was signed by the parties therein named: "Articles of agreement made and entered into this 30th day of January, in the year 1866, between Joshua C. Sanders, of the city, county and State of New York, Levi P. Wagner, of the same State, and Henry C. Inwood, of the city of Charleston, in the State of South Carolina, as follows: The said parties above named have agreed, and by these presents do agree, to become copartners in the renting or purchasing and cultivating of the plantation known as the Colburn plantation, situated on or near Bull's Bay, in the State of South Carolina, belonging to a Colburn, of said State, and the agreement entered into between said Colburn and Henry Inwood, whereby said Colburn has agreed to rent said plantation to said Inwood for the term of three years, with the privilege to said Inwood of purchasing the same within one year as per the terms and conditions in said agreement set forth, was made for the

mutual and equal benefit of the said parties hereto and by these presents said agreement is made a part of the property of said copartnership. It is further agreed between the parties that the business of the firm or copartnership shall be conducted in the name of said Levi P. Wagner, and shall continue from the date hereof for and during the term mentioned in said lease or until dissolved by mutual consent. It is further mutually agreed between the parties hereto that they will at once enter upon the cultivation of said plantation in the raising of cotton, corn or other products and continue the same during the continuance of this copartnership; and each party hereby agrees to contribute and pay one-third of the rental of said plantation, according to the terms in said lease specified, and one-third of all the expenses required and necessary in the cultivation of said plantation as the same may be required from time to time. The said Levi P. Wagner hereby agrees to and with each of the other parties hereto that he will at times during the continuance of this copartnership, devote from the date hereof his whole time, services and attention in conducting to the best of his skill and ability the cultivation of said plantations and all affairs pertaining to the same, that he will keep at all times just and true book or books of account setting forth all moneys received and paid out by him in or about the business and pertaining to the same, which book or books of account shall at all times be open to inspection of either of the other parties without hindrance, and for such services so rendered the said Levi P. Wagner shall be entitled to receive from and to be paid by said firm, for each and every month of such service rendered, dating from the 10th day of January, 1866, the sum of $100, and such salary shall be a part of the costs and expenses of conducting said business. It is further agreed between the parties that the product of said plantation as well as all implements, horses or mules procured for the same shall be the property of said copartnership, and all the receipts arising from the sale of the whole or any portion thereof shall be equally divided between the

parties, share and share alike, all expenses being first paid, and such division shall be made as often as there are any moneys thus received to be divided and may be desired by any of the parties hereto. It is further agreed by and between the parties to these presents that should they agree to purchase said plantation according to the terms and conditions of the agreement with Colburn, then each shall and will pay and contribute towards such purchase one-third of the money required to effect the same, and thereupon each party shall have an equal interest therein and be the owner of one-third thereof. It is further agreed by and between the parties to these presents that neither party shall enter into any bond, note or other obligation for and on account of said copartnership without the consent of the other parties first had and obtained, except said Wagner shall have the right to contract for all labor which he may deem necessary to conduct such cultivation both economically and profitably without such consent."

Thereafter and at the time mentioned the following agreement was entered into: "Whereas, an indenture of lease was made and entered into on the first day of February, 1866, between Benjamin P. Colburn, of the city of Charleston and the State of South Carolina, and Henry P. Inwood and Levi P. Wagner, lessees, wherein was leased unto said Inwood and Wagner the plantation belonging to said Colburn, situated in the parish of St. James Santee, in said State of South Carolina, containing about 1,500 acres, for the term of one year, at the yearly rental of $1,500, with the privilege to said lessees of two additional years at the same rent; and whereas, it was agreed by and between said Henry C. Inwood and Levi P. Wagner and Joshua C. Sanders to undertake the cultivation of said plantation, whereby it was agreed that each should bear mutual and equal expenses of conducting the same and each to share equal profit or loss; and whereas, said Henry C. Inwood and Levi P. Wagner under existing circumstances find themselves unable to fulfill their part of the said agreement with the said Sanders in furnish-

ing their respective portions of money requisite to carry on said plantation, and such moneys are furnished by said Sanders and are being so furnished now; therefore, in consideration of the premises and of one dollar to each paid by the said Joshua C. Sanders, we, the said Henry C. Inwood and Levi P. Wagner, do hereby each for himself set over and assign unto said Joshua C. Sanders the said indenture of lease from said Benjamin P. Colburn and all our rights, title and interest therein, together with an agreement made with the said Colburn, providing for the sale of said plantation to said Inwood and Wagner, a copy of which said agreement is hereto annexed. And we, the said Henry C. Inwood and Levi P. Wagner, do hereby renounce to the said Sanders our contract or agreement of copartnership made the 30th day of January, 1866, and do hereby consent that said copartnership be dissolved. Witness our hands and seals, this 30th day of April, 1866. Levi P. Wagner, (L. S.) Henry C. Inwood. (L. S.)."

On the same day the following instrument of writing was executed by Joshua C. Sanders: "Whereas, Levi P. Wagner has this day assigned to me the lease and agreement to sell the plantation known as 'Tibwin' plantation, made by Benjamin P. Colburn, together with a consent for the dissolution of the copartnership between us and Henry C. Inwood; therefore, be it known, that I accept said assignment and consent with the express understanding that if the same is also signed and executed by said Henry Inwood, that then the interest of said Wagner in said lease and agreement and plantation shall be equal between us, forming a new copartnership between said Wagner and myself, each bearing half expense and receiving or suffering equal profits or loss. Joshua C. Sanders." Dated 30th April, 1866.

In the letter of Joshua C. Sanders to Dr. L. P. Wagner, dated 7th August, 1866, he says: "I have not heard from Colburn's order yet. I am inclined to think the deed better be made to me only, as the arrangement between you and Inwood is so general in its nature, that I am inclined to think

he could claim an equal interest with you in the whole con-
cern as partner, both crop and plantation; so to be safe you
better consider it as belonging solely to me, unless you can
secure a release from him of any interest or claim.    I have,
you know, both release and assignment of contract; and if
deeded to me I will execute such papers as will secure to you
your half which you can hold.    I hope your expectations
may be realized.    From your account, the prospects certainly
look very encouraging.    I would very much like to look
upon your fields, as they are, in their present gorgeous cos-
tume.    I suppose you can verily say to your eyes, 'Not Solo-
mon in all his glory was arrayed like one of these.' "    The
postscript to the letter of Joshua C. Sanders to Dr. Wagner,
dated 28th July, 1866, is as follows:    "P. S.—I have re-
ceived no U. S. bonds for you, but I am bound to carry you
through, whether you are able to furnish any more means
yourself or not, and your half shall be secured to you, you
need not fear that.    Inwood I consider out of the question
in the plantation."

In the letter written by Joshua C. Sanders to Dr. Wagner
on the 20th of January, 1868, he says:    "In the meantime we
will abandon 'Tibwin,' trying to get off by first of February
if I can.    If they will persist in trying to crowd us off.    They
threaten to do so, and I think they will.    So much the bet-
ter, let them do so.    We shall stand better on the trial.    If
they have sought forcible remedy, the Court would be most
likely to say let them be satisfied with that; so we conclude
not to resist Hussy but let him go on, and we suffer him to
displace us not resisting in any way whatever.    Then we
will quietly withdraw—leaving it to him and his disinfected
negroes—as you call them, to occupy; then what shall we do
and where go, that is the question.    If you are still disposed
to continue, I acquiesce and will try once more.    My idea is
we better, if we can, come down on one of the islands and
leave that district all together.    I have been making in-
quiries but have not settled upon anything yet.    If you can't
do anything better, had you not better move Julia and the

children down to Mt. Pleasant, and try a rice plantation? There seems enough rice plantations to be had. What I would like is, whether rice or cotton, that we rent with privilege of buying at a given price. Did you see anything that would suit? If we could find one who could move everything right to, it would be the sort. Perhaps we better take Alston's on such terms this year. We will determine on my return."

In the letter of Sanders to Dr. Wagner on the 6th of February, 1868, he says: "The Alston plantation was struck down to-day at $2,265; the amount of the bond and mortgage I executed and left with Gen. Simons to be delivered on ascertaining that title is right. Lockwood is to make out abstract and deliver Gen. Simons, and he is to review it, and if correct, then the bond and mortgage is to be delivered. Then you will have to pay costs payable to attorney opposed to Alston, balance to Alston, all not to exceed $3,000. While I think we could have done better, yet it is cheap and we can make it pay, Providence permitting." There are numerous other letters containing expressions indicating that a partnership existed both as to "Tibwin" and "Doe Hall" plantations, between Sanders and Dr. Wagner. Sanders testifies that Dr. Wagner undertook the planting of "Doe Hall" *on the same theory as "Tibwin."* Again he says: "We were not partners, according to my sense of the law of the State of New York and the ruling of its highest Court, but simply joint ventures, as it were; *the arrangement was the same as that we made at the 'Tibwin' plantation,* as he asked me to come to his help; I did so with the agreement that I should first be reimbursed whatever I advanced, and if there were a profit over and above all advances, that should be divided between us" (italics ours). At another time he testifies as follows: "Q. You have said here to-day, that you did not consult Dr. Wagner as to the purchase of that plantation and as to the personal property on account of that plantation; is that true? A. Not on account of that plantation; we talked of it, *we talked of my purchasing the plantation, and he to go*

*on with it on the same terms he had been working 'Tibwin,'* and, I should say, 'Tibwin' and 'Doe Hall,' and he spoke of the *Alston* place as being desirable; I discouraged him somewhat and thought better to go elsewhere. At the time of the sale, at the auction he was not there present, and I at my own motion made the purchase." This testimony, aided by numerous other facts and circumstances, among which may be mentioned that Joshua C. Sanders did not at any time contend that the rental value of "Doe Hall" was to be taken into consideration in the division of the profits, satisfies us that there was a copartnership between Dr. Wagner and Joshua C. Sanders, and that "Doe Hall" plantation was part of the partnership property.

This finding, however, does not show that the appellants are entitled to relief. In his decree, the Circuit Judge says that the defendant, Sanders, also plead the statute of limitations and laches. It may be argued that the decree of the Circuit Court cannot be supported on these grounds, as the respondents' attorneys did not give notice that they would ask that the decree be affirmed on these additional grounds. Conceding this to be correct as to the statute of limitations, and conceding further that the statute of limitations is inapplicable as a bar to an action seeking equitable relief, the plaintiff may nevertheless be estopped by laches. It is true, that laches is not formally set up as a defense, but this is not necessary.

In En. of Pl. & Pr., vol. 12, page 829, it is said: "According to what is considered the better practice, the defense of laches is one of which it is not necessary to take advantage of by the pleadings. If the case as it appears at the hearing is liable to such an objection, the Court may, and usually will, remain passive, and refuse relief or decline to entertain the suit." In a note on page 830, under the head of *"Court's own motion,"* we find the following: "While the defense of laches need not be specially pleaded by the defendant, still, when not pleaded, unless it clearly and satisfactorily appears in the Court from the evidence that there has been an unrea-

sonable delay in prosecuting the suit, the Court, on its own motion, should not rest its decision on that ground. *Hager-man* v. *Bates* (Colo., 1897), 49 Pac. Rep., 139." Thus recognizing the power of the Court in a proper case, to raise such objection. In accordance with this doctrine the Supreme Court of its own motion, in the case of *Blackwell* v. *Ryan,* 21 S. C., 112, raised the question of laches and affirmed the judgment of the Circuit Court dismissing the complaint. The principles as to laches are well stated by his Honor, acting Associate Justice Benet, in *Babb* v. *Sullivan,* 43 S. C., 436, as follows: "It is confessedly impossible to adopt a general rule, and fix a definite length of delay which shall justify a court of equity in refusing relief on the ground of laches. Each case must be governed by its own facts, and courts of equity must be trusted to exercise a salutary discretion. As we understand the doctrine of estoppel by laches, the facts in this case would justify us in holding that even a shorter delay than nine years and six months, inexcusable or unexplained, would have furnished the Circuit Court with sufficient grounds for refusing the order moved for. Delay is not the sole factor that constitutes laches. If it were so, some period fixed by statute or by the common law of the courts would afford a safe and unvarying rule. Laches connotes not only undue lapse, lapse of time, but also negligence, and opportunity to have acted sooner; and all three factors must be satisfactorily shown before the bar in equity is complete. Other factors of lesser importance sometimes demand consideration, such as the nature of the property involved, of the subject matter of the suit, or the like. As a definition of 'laches,' however, it is sufficiently correct to say that it is the neglecting or the omitting to do what in law should have been done, and this for an unreasonable and unexplained length of time, and in circumstances which afforded opportunity for diligence. This definition will be found adequate as a test to be applied to the vast majority of cases. The doctrine embraced in it is in accordance with the principles and the practice of courts of

equity, which have from the beginning held themselves ready
to aid suitors who come in good conscience, good faith, and
with diligence; and from the beginning they have discoun-
tenanced stale demands, and refused relief from the effect of
negligence and inexcusable delay.    We have seen, from the
very nature of equity jurisdiction, and the principles that
guide and control its exercise, that it is impracticable, if not
impossible, to fix a definite period of time as a bar or limita-
tion to suits in equity; that lapse of time is not the only test
of staleness; that it needs to be conjoined with negligence or
inattention, and with opportunity for diligence and for act-
ing sooner.    For it is the essence of laches that the party
charged with it should have had either actual knowledge, or
such notice as would have put him on inquiry.    It is mani-
fest, therefore, that the period of time which shall be a bar in
equity must needs vary with the varying circumstances in
the different cases."

   In the case under consideration the testimony shows : That
Dr. Wagner died in 1872; letters of administration on his
estate were issued to the plaintiff, Julia E. S. Wagner, by the
Court of New York in 1873; thereafter there were transac-
tions relative to this property between Julia E. S. Wagner
and Joshua C. Sanders, which are described in the answer of
J. C. Sanders; the rights of third parties have become in-
volved in the manner hereinbefore mentioned; in 1898, when
Julia E. S. Wagner was examined as a witness, she testified
that the ages of her children were as follows : Wm. S. Wag-
ner, about 39 years; Max Wagner, about 37 years; and Cle-
ment Wagner, about 29 years; letters of administration were
not granted in this State until 1895, and no attempt was
made until then to call Joshua C. Sanders to an accounting
and settlement of the partnership affairs.    While the facts
show that the dealings between Dr. Wagner and J. C. San-
ders constituted, in law, a partnership, Sanders testified that
he did not so regard it, nor did any of the plaintiffs seem to
have taken this view of the transaction until recent years.
No fraud is alleged in the complaint.    We fail to discover

any good reasons why· the plaintiff, by the exercise of due diligence, might not have instituted proceedings for the equitable relief many years ago. Under these circumstances, this Court feels bound, by reason of laches on the part of the plaintiff, to dismiss the appeal.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.